446 F.2d 1339
 Simon WILLIAMSON, Plaintiff-Appellee,
v.
COMPANIA ANONIMA VENEZOLANA DE NAVIGACION (VENEZUELAN LINE),
Defendant-Appellant, and Westinghouse Electric
International Co., Defendant-Appellee.
COMPANIA ANONIMA VENEZOLANA DE NAVIGACION (VENEZUELAN LINE),
Third-PartyPlaintiff-Appellant,
v.
JOHN W. McGRATH CORPORATION and Westinghouse Electric
International Co.,Third-Party Defendants-Appellees.
 Nos. 867, 868, Dockets 35420, 35421.
 United States Court of Appeals, Second Circuit.
 Argued June 10, 1971.
Decided Aug. 16, 1971.
 
 Lester E. Fetell, Brooklyn, N.Y. (Sergi & Fetell, Brooklyn, N.Y.), for plaintiff-appellee.
 Renato C. Giallorenzi, New York City, for defendant-appellant and third-party plaintiff-appellant Venezuelan Line.
 John Nielsen, New York City (Fogarty & Nielsen, New York City), for defendant-appellee and third-party defendant-appellee Westinghouse Electric Corporation.
 James M. Leonard, New York City (McHugh, Heckman, Smith & Leonard, New York City), for third-party defendant-appellee John W. McGrath Corporation.
 Before FRIENDLY, MANSFIELD and OAKES, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 This is an appeal by the shipowner, Venezuelan Line, from a judgment for plaintiff, a longshoreman injured when a slat in a cargo crate on which he was standing during the course of his work broke. On appeal the shipowner claims the liability over of the stevedore (McGrath) and/or the shipper (Westinghouse), contributory negligence of the plaintiff, an error in the trial court's charge on unseaworthiness, and an excessive award of damages to the plaintiff.
 
 
 2
 The jury found no contributory negligence on the part of the plaintiff, no negligence on the part of Westinghouse, 100 per cent liability for unseaworthiness on the part of the shipowner and $49,571.00 damages. On consideration of all of the evidence, the trial court found that there was no factual basis in the light of the verdict for a finding that any of the stevedore's employees could have known the slats were insufficient, and directed judgment for the stevedore on the shipowner's third-party complaint.
 
 
 3
 The court also dismissed the third-party complaint against the shipper on the basis that the shipper could not be held to have breached any implied warranty that the crates were fit for their contemplated shipment.
 
 
 4
 Appellant's main argument as to plaintiff's contributory negligence and for liability over against the stevedore, the shipper or both, is based on the testimony of plaintiff's fellow worker and eye witness Pizzo. Pizzo testified that the slats on the crate in question were four in number, about four feet long, 'about a quarter of an inch' thick and 'about an inch and a half, two inches' wide. These were supposed to be the top slats of the crate for a transformer, a crate, according to this witness, 4 feet wide, 4 feet long and 5 feet 5 inches high. On the strength of that testimony the shipowner argues that the plaintiff was contributorily negligent and that the stevedore was liable over because-- even though the plaintiff was found by the jury not to be contributorily negligent-- his fellow employees should have seen the danger in the situation and should have laid a flooring over the crates, as with dunnage, before permitting its employees to walk over them. Failure to do so, the argument runs, was a breach of the stevedore's implied warranty of workmanlike performance. Mortensen v. A/S Glittre, 348 F.2d 383, 385 (2d Cir. 1965).
 
 
 5
 Similarly on the strength of Pizzo's testimony, the shipowner seeks indemnity from the shipper on the ground that quarter-inch slats on a crate were not built to sustain the weight of a longshoreman, and that the shipper should have known that longshoremen walk on crates during cargo operations. Simpson Timber Co. v. Parks, 390 F.2d 353 (9th Cir.), cert. denied 393 U.S. 858, 89 S.Ct. 126, 21 L.Ed.2d 127 (1968). This case presents, then, the unusual factual situation where the shipowner's defense against the injured plaintiff and claims over against the third parties turns on the defendant's asserting the credibility of plaintiff's own witness.
 
 
 6
 We agree with the conclusion of the court below that the jury, in finding the plaintiff not contributorily negligent, discarded his fellow worker's testimony as to the slat dimensions. That testimony was countered by plaintiff's own Exhibit 5, setting forth the dimensions and specifications for export crates for Westinghouse transformers. These show the top slats should have been 1'X6'X25', and three in number, to be nailed with ordinary 8d nails. The 1' thickness is specified, but, as plaintiff's witness Swift, the Westinghouse shipping and packaging foreman, testified, the rough finished wood, ponderosa pine or spruce, was actually closer to 3/4' in thickness. The dimensions for each crate varied slightly with the voltage and size of the transformer, according to the foreman Swift, who supervised the crating operation, from 26'X26'X47' to 36'X38'X60' overall.[1] From his testimony it appeared that the crates for this shipment were built according to specification. One hundred two of these crates, weighing a total of 68,025 pounds, i.e., approximately 667 pounds each on the average, were stowed in the No. 5 hatch, 85 of them in the lower hold aft, where the plaintiff's injury occurred.
 
 
 7
 There was ample testimony permitting the jury to infer that the injury occurred as the result of a latent defect in one of the slats which was between 26' and 36' long, 5' and 7' wide, and 3/4' and 1' thick. There was expert evidence from a marine surveyor who had considerable maritime experience with general cargoes, including transformers, justifying a jury finding that transformers crated according to the shipper's specifications would readily support a longshoreman's weight and would customarily be handled by walking on top of crates already stowed, building up the level of the cargo all around, without using dunnage for walking purposes. Besides this affirmative evidence the jury did not have to leave its common sense outside the jury room: the idea of crating 600-pound transformers with orange-crate slats, 1/4' thick and 1 1/2' or 2' wide, as Pizzo-- no doubt out of overzealous regard for his fellow worker's injuries-- would have had the jury believe were used, strikes us as incredible on its face. Every longshoreman walking on the crates would have been injured and the transformers in a shambles had this been the case. Rather, the jury chose to believe the plaintiff's and Westinghouse's proof that the transformers were crated according to specifications; it is precisely on this basis that the verdict may be explained.
 
 
 8
 With Pizzo's slat-dimension testimony out of the case, the Venezuelan Line's case on liability tumbles, like the proverbial house of cards. The plaintiff was not contributorily negligent as a matter of law in doing something customarily done; similarly the stevedore's other employees could not be required to have foreseen any danger from following this customary stevedoring practice. While the shipper's liability stands on a different footing, there is no requirement that a shipper provide an absolutely safe container on which longshoremen or crew may walk. It is enough that the shipper be free from negligence. The Carriage of Goods by Sea Act, 46 U.S.C.A. 1304(3), to which the instant bill of lading was subject, so provides.[2] The Act here applies. Serrano v. United States Lines, 238 F.Supp. 383, 388 (S.D.N.Y.1965). Unlike Simpson Timber Co. v. Parks, 390 F.2d 353 (9th Cir.), cert. denied 393 U.S. 858, 89 S.Ct. 126, 21 L.Ed.2d 127 (1968), the jury here found no negligence on the part of the shipper; in Simpson the jury found that the shipper had negligently packaged a bundle of doors and failed to warn of the danger. 390 F.2d at 355.[3]
 
 
 9
 The trial court's charge on seaworthiness, objected to also, was that if the jury found that plaintiff was injured 'when a slat on a crate on which he was standing during the course of his work broke, then you must find that the shipowner was liable to the plaintiff.' While this is very brief and to the point and not containing the usual 'seaworthiness' boilerplate, it produced no error in this case in light of the jury's obvious rejection of Pizzo's testimony that the slats were only 1/4' thick, for as the court pointed out the presence of a cargo container or crate with a latent defect causing injury renders a vessel unseaworthy. Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 212-213, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); Reddick v. McAllister Lighterage Line, Inc., 258 F.2d 297, 299 (2d Cir. 1958). While it may seem unfair to a shipowner that he be held responsible for a latent defect in a cargo container, he can recover over if he proves the shipper negligent, Simpson Timber Co. v. Parks, supra, 390 F.2d at 355, and the doctrine of unseaworthiness is not exactly a narrow one. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814 (2d Cir. 1970).
 
 
 10
 The shipowner complains that the verdict of $49,000 plus medical expense of $571 is excessive. Appellant concedes that the plaintiff's loss of earnings up to the date of his retirement was $4,725, and indeed the jury could have found it was in excess of $6,000. Moreover, plaintiff was forced to retire at the age of 64 when he had a work life expectancy, according to the U.S. Department of Labor 'work expectancy tables' apparently relied upon by the plaintiff in argument, and not objected to, of six years. At $4 an hour, this alone would have justified a verdict larger than the one rendered. The jury may well have considered, however, that plaintiff would have retired at age 65, but even on that basis the verdict is still supportable. He retired on May 1, 1969; he reached 65 on March 5, 1970; thus, he lost an additional 44 weeks' wages at $160 per week ($4 per hour), or $7,040. He had a permanent painful injury consisting of a chronic olecranon bursitis; a life expectancy of 13 years; and as symptoms of the injury restricted motion, lack of strength, tenderness and swelling in his elbow. The award here may properly be upheld as one for disability, pain and suffering. At least it is not so excessive as to shock the court's judicial conscience. Grunenthal v. Long Island R. Co.,393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968); Vaccaro v. Alcoa Steamship Co., 405 F.2d 1133, 1139 (2d Cir. 1968); Dagnello v. Long Island R. Co.,289 F.2d 797 (2d Cir. 1961).
 
 
 11
 Judgment affirmed.
 
 
 
 [1]
 The 47' and 60' dimensions, respectively, are the height of the crate, housing an ordinary cylindrical distribution transformer such as one sees on electric and utility poles anywhere
 
 
 [2]
 'The shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants.' 46 U.S.C.A. 1304(3)
 
 
 [3]
 An earlier opinion in Simpson, 369 F.2d 324 (9th Cir. 1967), sets forth the facts more explicitly than the later one: a cardboard container of a bundle of doors concealed a well 42' deep, where the doors had window openings; this was a trap for the longshoreman