Jose **FERNANDEZ**, Plaintiff,

v.

**CHIOS SHIPPING CO., LTD.,** Defendant and Third-Party Plaintiff-Appellee,

v.

**MAHER STEVEDORING COMPANY, INC.,** and **States Marine Lines, Inc.,** Third-Party Defendant-Appellants.

**CHIOS SHIPPING CO., LTD.,** Fourth Party Plaintiff-Appellee,

v.

**CASTLE & COOK, INC.,** et al., Fourth Party Defendants-Appellants.

Nos. 1090, 1093, 1216–1218, Dockets 75–7465, 76–7066, 76–7071, 76–7078 and 76–7079.

United States Court of Appeals, Second Circuit.

Argued May 26, 1976.

Decided Sept. 16, 1976.

---

146

Edwin K. Reid, New York City (Zock Petrie, Reid, Curtin & Byrnes, New York City, of counsel), for defendant and third and fourth-party plaintiff-appellee, Chios Shipping Co., Ltd.

James M. Kenny, New York City (McHugh, Heckman, Smith & Leonard, New York City, of counsel), for third-party defendant-appellant, Maher Stevedoring Co., Inc.

William P. Larsen, Jr., New York City (Boal, Doti & Larsen, New York City, of counsel), for third party defendant-appellee, States Marine Lines, Inc.

Patrick L. Wynne, New York City (Joseph Edward Brady, Fogarty & Wynne, New York City, of counsel), for fourth-party defendants-appellants Castle & Cook, Inc., Dole Corp., and Castle & Cook Foods Corp.

Before HAYS, MULLIGAN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

The issues raised on this admiralty appeal stem not from the injured longshoreman's quest for damages but from the subsequent contest among four other parties to shift the burden of indemnification for his recovery.

On September 1, 1968, employees of Maher Stevedoring Company, Inc. ("Stevedore"), plaintiff Fernandez among them, were unloading a cargo of "pre-palletized" units of pineapples from the # 3 hold of the SS Chios. A "pre-palletized" unit is a single package consisting of a pallet and cartons glued together so that no bands or lashings are necessary to bind the unit when transporting it. The lightweight, disposable pallets [1] were constructed by Castle & Cook, Inc., Dole Corp., and Castle & Cook Foods Corp. (collectively called "Shipper"), for use in transporting their pineapple products. Longshoreman Fernandez was injured when one such unit came apart as it was being lifted out of the hold, spilling cartons on him.

Fernandez sued Chios Shipping Co., Ltd. ("Shipowner") on theories of negligence and unseaworthiness.[2] The Shipowner impleaded States Marine Lines, Inc. (now Isco, Inc., "Time Charterer"), and the Stevedore for indemnification if it were found liable to plaintiff. Shipowner also sought indemnification from the Shipper. In case it was held liable to the Shipowner, the Time Charterer cross-claimed for indemnification from the Stevedore. Finally, both the Time Charterer and the Stevedore sought indemnity from the Shipper.

The jury returned a special verdict for plaintiff, finding that the SS Chios was unseaworthy and that this unseaworthiness was a proximate cause of the injury. They also found that Fernandez was not contributorily negligent and awarded damages of $90,200 [3] The indemnity claims then were submitted to the jury in interrogatory form, except for the Shipowner's claim against the Time Charterer, which the court resolved as a matter of law in the Shipowner's favor.

The jury found that the Stevedore breached its warranty of workmanlike performance by failing to supervise and direct its employees properly in the unloading operation and to provide for the safety of its employees; the jury also determined that the Stevedore's action was a proximate cause of plaintiff's injuries. As to the Shipper, the jury found that its negligence re-

<hr />

1. In contrast, another method of cargo transport utilizes heavy oak "stevedore" pallets upon which goods are loaded, secured, moved and then unloaded. Stevedore pallets are owned by the stevedoring company and designed for reuse.

2. The negligence claim was dismissed by the court.

3. Shipowner ultimately settled with plaintiff Fernandez for the sum of $75,000.

sulted in the disintegration of the pre-palletized unit and that the Shipper's actions also were a proximate cause of plaintiff's injuries. Finally, the jury found that the pineapple unit broke apart because of a latent or hidden defect in the pallet.

Based on these findings, the district court held that the Shipowner was entitled to indemnification from the Stevedore and the Shipper. As a matter of law, the court held that the Time Charterer was bound to indemnify the Shipowner from its liability to plaintiff, including costs and attorney's fees, because the Time Charterer warranted in Clause 8 of the charter that it would safely and properly assume control of cargo operations. The court also held that the Time Charterer was entitled to indemnification from the Stevedore and Shipper, in accordance with the jury's answers to the interrogatories. In sum, although the Shipowner was found to be liable to plaintiff, it was entitled to indemnification from all of the other parties. The Time Charterer, bound to indemnify Shipowner, was itself entitled to indemnity from the Stevedore and the Shipper. Thus, the burden of the longshoreman's recovery ultimately fell upon the Stevedore and the Shipper. Every participant held bound to indemnify another appeals from that determination. The Shipper also challenges the amount of the longshoreman's recovery as excessive. Finally, appellants raise numerous procedural and evidentiary claims of error. In an attempt to simplify the issues involved, we shall analyze each claim of error according to the relationship of the parties, presenting additional facts as necessary.

I. *Stevedore's Warranty of Workmanlike Performance.*

█ Both the Shipowner and the Time Charterer claimed indemnification from the

Stevedore based on its warranty of workmanlike performance. *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Demsey & Associates v. S. S. Sea Star,* 461 F.2d 1009, 1017 (2d Cir. 1972). The jury found that the Stevedore breached this warranty by failing to properly supervise and direct its employees in the unloading and by failing to provide for the safety of its employees during this process;[4] the jury also determined that the Stevedore's actions were a proximate cause of the longshoreman's injuries and that the failure of the Ship's agents to remedy the condition did not preclude the Shipowner's indemnification from the Stevedore. The Stevedore argues that there was insufficient evidence to support the jury's factual findings and that it has no legal duty to provide for the safety of its employees with a sanctuary for retreat. Appellant also raises numerous procedural errors, specifically that the district court failed to give attorneys an opportunity to make objections to its charge and interrogatories, as provided by Fed.R. Civ.P. 51; that the district court permitted the Time Charterer to present argument in summation even though the Time Charterer's liability was not a jury issue; and that prejudicial error resulted from omissions in the interrogatories submitted to the jury. We find sufficient evidence to support the jury's finding that the Stevedore's failure to properly supervise and provide safe working conditions for its employees was a proximate cause of the longshoreman's injuries. Appellant's procedural arguments are without merit.[5]

Testimony by Edward Ponek, the Stevedore's safety manager, revealed that a superintendent from the Stevedore was assigned to supervise the discharge of the

4. The jury also found that the Stevedore did not breach its warranty in improperly loading the pallets onto the forklift or by failing to comply with applicable safety regulations. Further, the jury determined that the captain of the crew should not have known of the condition and that the ship's agents did not acquiesce in the longshoreman's working conditions.

5. Stevedore also raises questions about the apportionment of damages between Shipper and Stevedore. This issue was not raised before the district court after verdict and, thus, is not properly before us.

Chios. Two witnesses testified, however, that no supervisory personnel were present during discharge on the day of the accident. Plaintiff Fernandez stated that he was given no instructions as to method of unloading and that the confined area of the hold, packed high with the pallets, forced him to stand directly under each pallet as it was lifted out of the hold. Not contesting these facts, the Stevedore asserts its lack of responsibility because the defect was latent and thus not discoverable by a reasonable inspection and because it had no knowledge, constructive or actual, that plaintiff would not have a reasonably safe place to work.

In *Fairmont Ship. Corp. v. Chevron Internat'l Oil Co., Inc.*, 511 F.2d 1252 (2d Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975), we noted that *Ryan* indemnity evolved to ameliorate the harshness of the shipowner's nondelegable duty to provide a seaworthy ship, a duty which imposes liability independent of fault.[6] The principle underlying indemnification to the shipowner, then, is that liability ultimately "should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc.*, 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964); *Hurdich v. Eastmount Shipping Corp.*, 503 F.2d 397 (2d Cir. 1974). If the improper, unsafe or incompetent execution of the stevedore's services foreseeably renders the vessel unseaworthy, the stevedore will have breached its warranty of workmanlike performance and will incur liability to the shipowner. Moreover, the warranty may be breached by the stevedore's nonnegligent as well as negligent conduct, if it

were the party best able to minimize the particular risks involved. *Italia Societa, supra; Fairmont Ship. Corp. v. Chevron Internat'l Oil Co., Inc., supra; DeGioia v. United States Lines Company*, 304 F.2d 421 (2d Cir. 1962). In *Guidry v. Texaco, Inc.*, 430 F.2d 781 (5th Cir. 1970), the injured longshoreman was required to work in a dangerous area. The court there held that the employer breached its warranty of workmanlike performance because it failed to take any steps to make the work area reasonably safe. In the instant case, the parties agree that the hold was a confined area and that no supervisory personnel were present to oversee unloading. Fernandez was obliged to stand directly under the pre-palletized units, each of which could weigh as much as 1¾ tons, while they were being hoisted out of the hold.[7] It is not difficult to foresee the injury which might and did result, whether by latent or apparent defect in the pallets, careless operation of the forklift, or whatever cause. Imposing indemnity upon the Stevedore in this case does not make it an insurer against *any* loss or require it to correct *every* hidden danger, *Calderola v. Cunard Steamship Company*, 279 F.2d 475, 478 (2d Cir.), *cert. denied sub nom. Cunard Steamship Co., Ltd. v. Clark & Son*, 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104 (1960). Rather, where working conditions create obvious risks of injury which might be lessened by a more careful method of discharge, the stevedore is required to do whatever it reasonably can to minimize the danger, whether by rearranging cargo or having supervisory personnel on hand to assess safety and oversee discharge.[8] *Cf. McNamara v. Weichsel Dampfschifffahrts Ag Kiel, Germany*, 339

---

6. Judge Smith thoroughly analyzed the historical development of the *Ryan* doctrine in *Fairmont, supra*, 511 F.2d at 1255–1258. *See also* G. Gilmore & C. Black, *The Law of Admiralty*, § 6–55 (2d Ed. 1975); Proudfoot, "The Tar Baby: Maritime Personal-Injury Indemnity Actions," 20 *Stan.L.Rev.* 423 (1968).

7. The jury specifically found that he was not contributorily negligent in so doing.

8. Thus, *Scott v. SS Ciudad de Ibague*, 426 F.2d 1105 (5th Cir. 1970), which denied indemnity to

the shipowner, is not apposite. In that case, several sacks of coffee unexplainedly fell upon a longshoreman involved in pulling them down from stacks for unloading. Evidence presented at trial showed the unloading procedures to be customary and ordinary and the stowage defect to be latent, originating either during loading or the voyage. The Court of Appeals held that the stevedore could not be charged with knowledge of defects in stowage which were not discoverable by a reasonable inspection. The case at bar presents quite a different situation, since the jury concluded that the Stevedore's

F.2d 475, 477–478 (2d Cir. 1964). The jury's findings that the Stevedore failed to provide adequately for the supervision and safety of its men and that this failure was a proximate cause of the injuries are supported by the evidence.

The procedural defects alleged to constitute reversible error merit only brief discussion. Stevedore first complains that the district court failed to include an option in the indemnity interrogatories that the Shipowner did not meet its burden of proof. We disagree. Judge Motley's charge, the pertinent part of which is set out in the margin,[9] adequately covered the subject, making a separate interrogatory inessential. Second, while under Fed.R.Civ.P. 51, the trial court should permit objections to the charge and special questions prior to the jury deliberations, failure to do so in this case is not reversible error. Review of the transcript reveals that the district court had spent many hours working with the attorneys to "iron out" the charge and the questions. The court was fully aware of their respective positions and objections, had ruled on them, and had given blanket exceptions. Finally, the Stevedore argues that the district court erred in permitting the Time Charterer a summation while withholding the issue of its liability to the Shipowner from the jury. In addition to the latter issue, however, the Time Charterer was also claiming indemnity from the

Stevedore, which *was* a jury issue, since it was based on the warranty of workmanlike performance. Given the trial court's broad discretion in the conduct of litigation, we find no abuse in permitting summation by the Time Charterer.

## II. *Time Charterer's Contractual Duty to Shipowner.*

The Time Charterer appeals from the district court's ruling that it must indemnify the Shipowner under Clause 8 of the time charter. Clause 8, in pertinent part, provides that "the charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain. . . ."[10] Relying primarily on this Court's decisions in *Nichimen Company v. M. V. Farland*, 462 F.2d 319 (2d Cir. 1972), and *Demsey & Associates v. S.S. Sea Star, supra*, the district court concluded that Clause 8 shifted responsibility for loading, stowing, trimming and discharge of cargo to the Charterer, which then must indemnify the Shipowner for all damages resulting from the improper performance of any of the stipulated cargo operations for which Shipowner was held liable. The Time Charterer proffers two arguments in opposition to this interpretation: first, that *Nichimen* applies only to cases of cargo damage where the negligence or fault of the charterer caused the damage; and second, that the district court in effect imposed upon it a

---

culpability emanated from the method of unloading and the absence of supervisory personnel.

**9.** The district court's charge, in pertinent part, stated:

Now, as I have said, in their claims against the stevedoring company the shipowner and these other parties have the burden of establishing that claim by a fair preponderance of the credible evidence. Thus, even though you have found in favor of the plaintiff in an action against the shipowner, you may not find in favor of the shipowner against the stevedoring company unless you find by a fair preponderance of the evidence that the plaintiff met with his accident because of the failure of the stevedoring company to perform its job of providing a place for plaintiff to get out of the way or failed in its duty of properly unloading the pallet from the ship in

a workmanlike manner and with reasonable safety to persons and property.

If the shipowner or these parties have sustained this burden of proof, then, as I said, the parties are entitled to recover against the stevedoring company.

**10.** The full text of Clause 8 reads as follows:

That the Captain shall prosecute his voyages with the utmost dispatch and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the owners) shall be under the orders and directions of the charterers as regards employment and agency; and the charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain who is to sign Bills of Lading for Cargo as presented in conformity with the Mate's or Tally Clerk's receipts without prejudice to this Charter Party.

"species of liability without fault . . . in the nature of a warranty of safe and proper performance of cargo operations." We reject the Time Charterer's overly restrictive interpretation and affirm the district court's granting of indemnification in favor of the Shipowner under *Nichimen*.

*Nichimen* involved damage to a cargo of steel coils negligently stowed and loaded by a specialist hired by the time charterer's port agent. Under the Carriage of Goods By Seas Act ("Cogsa"), both the time charterer and shipowner were held responsible for damages owed to the purchaser of the cargo.[11] On appeal, the time charterer challenged the conclusion that, as between itself and the shipowner, it was responsible to indemnify the shipowner under Clause 8 of the time charter, which clause was virtually identical to that involved in the instant case.

Judge Friendly, speaking for this Court, noted that absent any special provision, the duty to care for cargo and the consequences for failing to do so properly would fall upon the ship and the shipowner. However, under Clause 8, the time charterer assumed the primary responsibility for the safety of stowage, insofar as cargo damage was concerned. Since the cause of the damage, improper stowage, was within the scope of responsibility which Clause 8 intended to shift from the shipowner to the time charterer, the shipowner was entitled to indemnification.

The Time Charterer in the instant case attempts to distinguish *Nichimen* by arguing that *Nichimen* involved cargo damage resulting from negligent conduct while the case at bar concerns personal injury without any showing of negligence by the Time Charterer. We can find no convincing basis to limit *Nichimen* to cargo damage situations. When Clause 8 shifts the responsibility of proper discharge of cargo to the charterer, that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel unloading it.[12] The Time Charterer also argues that *Nichimen* requires a finding of negligence on the part of the charterer before indemnification is justified. However, in *Nichimen*, the defective stowage was caused by a "specialist" hired by the time charterer's port agent; there did not appear to be any negligent conduct by the port agent or the time charterer. Similarly, in *Demsey & Associates v. S.S. Sea Star, supra,* the time charterer was found to have breached its duty to properly load and stow the goods under Clause 8 where its agent had negligently designed the stowage plan. Thus, in both cases, the time charterer was required to indemnify the shipowner under Clause 8 of the charter because of the negligence of its stowage agent. In the instant case, the Stevedore hired by the Time Charterer was found to have breached its warranty of workmanlike performance by failing properly to supervise and provide for the safety of its employees during unloading operations. Since the cause of the damage, improper discharge of cargo, is within the scope of re-

11. Under Cogsa, the liability to the carrier is based on fault only. Where the shipper makes out a prima facie case under the statute by proving loss or damage to the goods while they were in the hands of the carrier, the burden shifts to the carrier to either disprove negligence or establish that the loss was occasioned by one of the statutory exceptions. Thus, in *Nichimen,* for example, both the shipowner and the time charterer were found to be liable as carriers under Cogsa. The real question was whether one or the other could shift the burden of the loss. Gilmore & Black, *The Law of Admiralty, supra,* § 3–43 at 183–184.

12. In support of his argument, Time Charterer extensively quotes from *Mondella v. S.S. Elie V.,* 223 F.Supp. 390 (S.D.N.Y.1963), a district court decision antedating *Nichimen.* In *Mondella,* responding to a claim by a shipowner for indemnity against a time charterer based on Clause 8 in a personal injury suit, the district court held that Clause 8 did not shift responsibility for stevedoring operations or the control of the ship or any portion thereof to the time charterer. As discussed above, *Nichimen* clearly stated that Clause 8 shifts primary responsibility for the active control of cargo operations to the time charterer. Thus, as Judge Motley concluded, the analytic underpinnings of the *Mondella* decision are inconsistent with *Nichimen,* rendering the earlier case a dubious precedent.

sponsibilities shifted from Shipowner to Time Charterer by Clause 8, the Time Charterer is obligated to indemnify the Shipowner.

### III. *Shipper's Liability.*

The district court submitted three interrogatories to the jury concerning the potential liability of the Shipper, which also manufactured the pallets. The jury concluded that the pre-palletized unit broke apart due to the negligence of the Shipper, that the pallet contained a latent or hidden defect, and that the Shipper's actions were a proximate cause of the longshoreman's injuries. On the basis of these findings, the district court held that the Shipowner and Time Charterer were entitled to full indemnification from the Shipper.[13] Although the claim of indemnity against the Shipper was based on theories of breach of warranty, strict liability in tort, and negligence, the parties agree that the district court submitted the indemnity issue to the jury only on a negligence theory.[14] On appeal the Shipper raises five claims of error: (1) that the trial court erred in permitting an unqualified witness to testify as an expert; (2) that the trial court improperly admitted the surveys of independent contractors into evidence as business records; (3) that there was no evidence to support a finding of a latent defect; (4) that there was no evidence that it was negligent; and (5) that the verdict for the plaintiff was excessive.[15] We shall first consider appellant's challenges to the admission of certain evidence and then proceed to the sufficiency questions.

The Shipper argues that the district court abused its discretion in permitting Daniel Devaney to testify as an expert witness for the Shipowner because he was unqualified to testify about the pre-palletized units and because his testimony lacked any probative value. We disagree.

Rule 702 of the Federal Rules of Evidence permits a witness qualified by "knowledge, skill, experience, training, or education" to testify as an expert if his specialized knowledge would assist the trier of fact. The broad discretion of the trial court to determine the qualifications of witnesses will not be disturbed unless its ruling was "manifestly erroneous." *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962). The witness Devaney had worked as a longshoreman for three years, had operated his own marine carpentry business for twenty-four years and was currently serving as a consultant in marine carpentry for a stevedoring company; he testified that he had built hundreds of thousands of stevedore's pallets. The court properly admitted his testimony about the differences between stevedore's pallets and the pre-palletized units used by fruit shippers; the fact that he had not examined the particular pallets used by the Shipper here does not require exclusion of his testimony since he clearly stated that he was familiar with this type of pre-palletized unit. See *King v. Deutsche Dampfs-Ges,* 523 F.2d 1042, 1045 n.2 (2d Cir. 1975) (witness who worked with stowed cargo for

---

**13.** The Stevedore was entitled to partial indemnification, since it and the Shipper were held jointly liable for the amount of the judgment.

**14.** One part of the court's charge to the jury does discuss breach of implied warranty. The court noted that if the jury found that the Shipper breached its implied warranty it "will return an answer appropriate as set forth on this questionnaire." However, the only questions relating to the Shipper were the three described above. A finding of a latent defect does not require the conclusion that the manufacturer breached its implied warranty, since the jury must also find that the defect was present when the pallet left the manufacturer's control. Moreover, the district court also used the term "latent defect" in its discussion of negligence. Thus we cannot conclude that the court submitted the indemnity claims to the jury on the warranty or strict liability theories. However, we note that since a products liability claim requires only proof of a defect in the product when it leaves the manufacturer's possession which proximately causes injury, all of which the Shipowner sufficiently proved in his negligence claim, it is likely the jury would have reached the same result on a products liability theory.

**15.** Shipper also raises claims of procedural errors which have no merit.

28 years qualified as expert on stowage); *Marchese v. Moore-McCormack Lines, Inc.,* 525 F.2d 831 (2d Cir. 1975) (marine carpenter with 24 years experience qualified to testify on proper stowage). Devaney also gave his opinion, in answer to a hypothetical question, that the possible causes of the disintegration of the pallet were excessive handling in transit and faulty materials in construction; he did not purport to know the actual cause of the accident, since the particular pallet involved was not available for inspection. The evidence showing the circumstances of the accident and the design of the pallet was sufficient to permit an expert to express an opinion as to the cause of the accident, even if that opinion is not conclusive. His lack of inspection of the particular pallet involved affects the weight accorded his testimony rather than its admissibility. *Nanda v. Ford Motor Co.,* 509 F.2d 213, 221 (7th Cir. 1974). The Shipper also objects to the admission into evidence of the marine surveyor's reports at six loading ports and New York about the condition of the ship's holds to receive cargo, the cargo itself, and the stowage of the cargo. Peter Lantelme, cargo claims manager of the Time Charterer who had worked in the claims department for thirty years, testified that such surveys were ordered, received and recorded in the regular and ordinary course of business. As a part of the customary business practices of the Time Charterer, these surveys were properly admitted as records of a regularly conducted activity.[16] See Fed.Rules of Evidence, Rule 803(6).

■ The Shipper contends that the evidence is insufficient to support the jury's findings of a latent defect in the pallet or that the Shipper was negligent in manufacturing it. While the evidence in this case is less than overwhelming, we conclude that it is sufficient to support the jury's determinations.

As to the allegedly defective pallet, the Shipper claims that the record is barren of evidence that any defect existed, obvious or latent. In cases such as this, where the injury-causing instrument is not available for inspection at a trial occurring seven years after the accident, the courts have allowed circumstantial proof to raise permissible inferences of defective manufacture. *Lindsay v. McDonnell Douglas Aircraft Corporation,* 460 F.2d 631 (8th Cir. 1972) (proof of specific defect in construction or design not required in strict liability case); *Nicklaus v. Hughes Tool Company,* 417 F.2d 983 (8th Cir. 1969) (circumstantial evidence sufficient to support findings that manufacturer was not negligent); *Franks v. National Dairy Products Corporation,* 414 F.2d 682 (5th Cir. 1969) (defect can be inferred from unexplained occurrences in products liability case); *North American Aviation v. Hughes,* 247 F.2d 517 (9th Cir. 1957), *cert. denied,* 355 U.S. 914, 78 S.Ct. 341, 2 L.Ed.2d 273 (1958) (evidence supports theory of defective manufacture in negligence suit although cause of accident unclear). The trier of fact, of course, is not required to draw these inferences but can choose to accept or reject them, depending on its evaluation of the weight to be accorded to competing and perhaps conflicting evidence.

The appellee's expert, Mr. Devaney, testified that in his opinion, the probable cause of the accident might be excessive handling of the "fragile" disposable units or faulty materials used in manufacture. Much of appellee's evidence tended to show the lack of any apparent defect or any change in the pallets due to mishandling after leaving the Shipper's hands: clean mate's receipt, loading certificate and clean bill of lading to show that the cargo was received without

---

16. In cases relied upon by Shipper, *J. Howard Smith, Inc. v. S.S. Maranon,* 501 F.2d 1275 (2d Cir. 1974), *cert. denied,* 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975), and *United States v. Rosenstein,* 474 F.2d 705 (2d Cir. 1973), reports were held inadmissible because there was no foundation laid by one sufficiently familiar with the business practice of the company which kept the records. Here, the reports were kept as a regular part of the Time Charterer's business and a longstanding employee of the Time Charterer sufficiently familiar with regular business procedures testified thereto.

apparent defect or damage and marine surveyor's reports made in regular course of business at each port to demonstrate no damage or apparent change during the voyage. One reasonable and permissible inference to draw from these occurrences was that the pallet contained a latent defect from the manufacturing process that caused it to disintegrate when it was hoisted from the hold.

To support a claim for negligent manufacture, a preponderance of the evidence must show that the product was defectively designed or manufactured, that the defect was a proximate cause of the injury, that the defect existed when the manufacturer parted with possession and that the manufacturer failed to make any reasonable inspection or test to discover the defect. The manufacturer thus has the "affirmative duty to make such tests and inspections, during and after the process of manufacture, which are commensurate with the dangers involved in the intended use of the product." *Nicklaus v. Hughes Tool Company, supra,* 417 F.2d at 986. Pre-palletizing the cargo facilitates loading and unloading by obviating the need to shift and secure the goods to and from stevedore's pallets in transport; however, it also removes the added safeguards of lashings and ties and the extra sturdiness of the reusable pallets themselves. We have discussed above the sufficiency of the circumstantial evidence to show the defect in the pallet which broke and its existence when the manufacturer parted with possession. That a defect was a proximate cause of the longshoreman's injury cannot seriously be disputed. The remaining question is whether the Shipper failed to make any reasonable inspection or test to discover the defect. The Shipowner, in its interrogatories to Shipper, attempted to discover specifics about the design, construction, quality control, inspection and load testing of the pallets before use; it also sought from the

Shipper a pre-palletized unit similar to the one which broke, for the purposes of inspection. Although the Shipper responded affirmatively to the latter request, the unit was not produced, forcing the Shipowner to obtain an order to show cause from the district court.[17] Additionally, the Shipper's answers to many of the interrogatories were simply not responsive. For example, in answer to questions about load testing, the Shipper discussed the strength of the type of wood used.[18]

This Court has previously noted that, particularly in admiralty suits, the "non-production of material evidence which is in the control of a party raises an inference that the evidence is unfavorable to that party. . . . The inference raised has been said to be sufficient to decide a close case." *Tupman Thurlow Co., Inc. v. S.S. Cap Castillo,* 490 F.2d 302, 308 (2d Cir. 1974). The Shipper here offered no evidence in rebuttal to show any testing or examination of the pallets prior to use. While non-production alone may not be the determinative factor, *Hellenic Lines Ltd. v. Life Ins. Corp. of India,* 526 F.2d 830, 832 (2d Cir. 1975), here, in addition to the Shipper's failure to reveal any measures taken to discharge his affirmative duty to inspect and its failure to provide a unit like that which caused the injury, the evidence detailed above supported a finding of a defect in the materials used or in the construction of the pallet. The jury thus was entitled to conclude that the additional information in the possession of the Shipper would have been unfavorable to it.

Finally, although the jury's verdict for the longshoreman was generous, it was not so excessive as to shock the court's conscience, *Williamson v. Compania Anonima Venezolana De Navigacion,* 446 F.2d 1339, 1342 (2d Cir. 1971), *cert. denied,* 404 U.S. 1059, 92 S.Ct. 739, 30 L.Ed.2d 746 (1972), since plaintiff did suffer permanent

---

17. The record is not clear as to whether the Shipper ever produced a pallet of the same type and kind used on the Chios.

18. The Shipper also was unable to recall when the pallets were designed and could not locate or produce the design or a mock up model.

restriction of movement as a result of the accident.

Affirmed.

