Dominick CAMIOLO, Plaintiff,

v.

FELICITAS–RICKMERS LINE K.G. & CO., and Costa Lines, Defendants.

No. 74 Civ. 5499 (CHT).

United States District Court,
S. D. New York.

March 28, 1978.

Paul A. Gritz, Brooklyn, N.Y., for plaintiff.

Haight, Gardner, Poor & Havens, New York City, for defendant Felicitas-Rickmers Line K.G. & Co.; William P. Kain, Jr., New York City, of counsel.

Michael D. Martocci, New York City, for defendant Costa Lines.

## MEMORANDUM

TENNEY, District Judge.

Defendant Costa Armatori S.p.A., an Italian company sued here as Costa Lines ("Costa"), has moved for summary judgment in plaintiff's personal injury suit against it as time charterer of the vessel ETHA owned and manned by the defendant Felicitas-Rickmers Line K.G. & Co. of Hamburg, Germany ("Felicitas"). The grounds for Costa's motion under Rule 56 of the Federal Rules of Civil Procedure are set out in the alternative: Costa alleges that

the plaintiff's complaint is either time-barred or estopped through laches, or that it fails to state a claim upon which relief can be granted. Because the Court has determined that the last contention is correct, it need not reach the limitations question, and for the reasons set out below Costa's motion under Rule 56 is granted and the complaint is dismissed as to Costa.

Plaintiff alleges that he was injured on April 10, 1974, aboard the ETHA while he was engaged in his duties as a longshoreman in the employ of stevedores under contract to Costa. The ETHA was at the time moored at Pier 9, Port Authority, Brooklyn, New York. Plaintiff originally sued only Felicitas and was deposed by that defendant on January 7, 1976. Affidavit of Michael D. Martocci, sworn to November, 10, 1977, ¶ 7. "Plaintiff testified at [this] pretrial deposition . . . that his accident was caused by ice on the deck of the ETHA which was manned by a German crew" and that "he saw officers and crew members on deck at the time of his accident." *Id.*

Apparently plaintiff's decision to name Costa as a defendant so late in the day was prompted by this circuit's decision in *Fernandez v. Chios Shipping Co.,* 542 F.2d 145 (2d Cir. 1976). William P. Kain, Jr., attorney for defendant Felicitas, offered the following explanation for plaintiff's failure to sue Costa originally:

> Prior to the 1976 decision of the Court of Appeals for this Circuit in *Fernandez v. Chios Shipping,* the law appeared clear to the admiralty bar that a time charterer would not be held responsible either initially to the plaintiff or as indemnitor to the shipowner. However, the decision in *Fernandez* clearly changed the law insofar as the relationship between the charterer and the shipowners is concerned and no post-*Fernandez* case has been decided to deponent's knowledge as to whether the status of the plaintiff against the charterer has been changed. Therefore, plaintiff's counsel had no reason to believe that defendant Costa was in any way responsible for the accident until the recent decision.

Affidavit of William P. Kain, Jr., sworn to November 18, 1977, at 3. Since plaintiff has not himself responded to Costa's argument that no claim has been stated against it, preferring to address himself to the issue of time bar and laches, the Court will use whatever material it can glean from the Kain affidavit in considering whether summary judgment is "appropriate" by the terms of Rule 56.

In *Klishewich v. Mediterranean Agencies, Inc.,* 302 F.Supp. 712, 713 (E.D.N.Y.1969), the court stated the traditional admiralty rule that a "time charterer assumes no liability flowing from the unseaworthiness of the vessel or the negligence of the crew unless it is shown that the parties to the charter intended otherwise." *See* G. Gilmore and C. Black, *The Law of Admiralty* §§ 4–14. to 4–19., at 229–39 (2d ed. 1975) ("Gilmore and Black"). It is this Court's opinion that *Fernandez* makes no fundamental change in the law as stated in *Klishewich.* In *Fernandez* a longshoreman was injured aboard ship when struck by some of the components of a glued-together pallet of cartons which came apart during unloading operations. The argument on appeal concerned the respective liabilities of the shipper, the shipowner, the time-charterer and the stevedore. As between the time-charterer and the shipowner Clause 8 of their time-charter contract provided that "the charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain." The court of appeals found that this language represented acquiescence on the part of the time-charterer to be liable for injury which occurred during the unloading.

> When Clause 8 shifts the responsibility of proper discharge of cargo to the charterer, that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel unloading it.

*Fernandez, supra,* 542 F.2d at 152.

Clause 8 of the time-charter between Costa and Felicitas contains precisely the same language—a standard formulation—as was found to shift liability in *Fer-*

**20**

*nandez.* However, in *Fernandez* the shift occurred where the injury complained of "result[ed] from improper discharge" of cargo, *i. e.,* from activity within the scope of responsibility accepted by the time-charterer in agreeing to Clause 8. In the instant case the injury is alleged to have come about because of an icy deck, a condition traditionally within the ambit of the shipowner's duty in a time-charter. *See Guerrini v. United States,* 167 F.2d 352 (2d Cir.), *cert. denied,* 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393 (1948). Moreover, this injury was in no way "cargo-related" in the manner of *Fernandez,* where the plaintiff was injured in the very act of unloading the cargo. There is no reason to extend the holding of *Fernandez* to shift liability from shipowner to charterer in situations beyond the loading, stowing and trimming of cargo; absent manifest intention otherwise, the traditional division of responsibility between the charterer and the shipowner should continue to obtain if violence is not to be done to their contractual agreement. To the shipowner, by tradition and by contract, falls the duty to maintain decks in a seaworthy condition.

A study of the balance of the time-charter provisions between Costa and Felicitas supports the view that deck maintenance was Felicitas' responsibility in the first instance. Clause 1 of the time-charter reads in pertinent part:

> [T]he Owners shall provide and pay for . . . all the cabin, deck, engine room and other necessary stores . . . and maintain her class and keep the vessel in a thoroughly efficient state in hull, machinery and equipment . . ..

With certain additions that only increase the shipowner's contractual responsibility, the language of Clause 1 in the time-charter between these defendants is precisely the same as that in Clause 1 of the standard time-charter set out in Appendix B of Gilmore and Black, *supra.* The authors construe this language to mean that "the owners will keep the vessel fit throughout the charter term." *Id.* § 4–14., at 230. Clause 41 of the time charter lends further support to the view that no unusual shift in respon-

sibilities was contemplated since it provides that the vessel will be delivered to the charterer with a "Regular Deck Regulations Certificate" and that if longshoremen's work is delayed due to the owner's failure to comply with safety regulations the owner will bear the cost of such delay.

 This Court can find no intent between the parties for the charterer to take on the responsibility to maintain the ETHA's decks during the stevedoring operations contemplated by Clause 8. Since the accident had nothing to do with proper or improper discharge of cargo, the *Fernandez* rationale is inapposite. Therefore, summary judgment is awarded to defendant Costa.

There being no just reason for delay, defendant Costa is directed to submit a judgment on notice to the other parties.

So ordered.