JAMES AND PRECIOUS WILLIAMS, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket No. 23854-90
United States Tax Court
T.C. Memo 1992-428; 1992 Tax Ct. Memo LEXIS 450; 64 T.C.M. (CCH) 295; July 28, 1992, Filed *450 Decision will be entered under Rule 155. For Petitioners: Fred K. Persons. For Respondent: Patricia A. Evans. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in income taxes and additions to tax for petitioners as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661
1986
$ 7,906
$ 5,930
[1]
$ 1,977
1987
8,122
6,092
[1]
2,031
Mr. Williams booked bets for customers through an illegal gambling house in the years at issue. After concessions, the issues for decision are: 1. Whether respondent's determination that petitioners had unreported gambling activity income of $ 22,563 for 1986 and $ 24,193 for 1987 should be sustained. We hold that it should. 2. Whether petitioners are liable for additions to tax for fraud in 1986 and 1987 under section 6653(b)(1)(A) and (B). We hold that Mr. Williams *451 is and Mrs. Williams is not. 3. Whether petitioners are liable for additions to tax for substantial understatement of tax under section 6661 for 1986 and 1987. We hold that they are. The Court has also filed Bryant v. Commissioner, T.C. Memo. 1992-427, and Webster v. Commissioner, T.C. Memo. 1992-220, which involved other taxpayers who were associated with the illegal gambling business at issue in this case. Section references are to the Internal Revenue Code in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure, and, where noted, to the Federal Rules of Evidence. FINDINGS OF FACT 1. Petitioners
Petitioners were married and resided in Flint, Michigan, when they filed their petition. During the years at issue, Mr. Williams worked for Buick, Oldsmobile, and Cadillac in Grand Blanc, Michigan, on the third shift (10:30 p.m. to 7 a.m.). Mrs. Williams was not employed outside the home in 1986 or 1987. 2. Gambling Activities
a. Mertis Washington's Gambling House
In 1986 and 1987, Mr. Williams took bets from customers and placed them with an illegal gambling house operated *452 by Mertis Washington (Washington) in Flint, Michigan. Petitioners failed to report any income from this activity. Washington received money from people betting on a particular three- or four-digit number. Some people placed bets through "runners" who transported bet slips and money to the house for tabulation. Others placed them through telephone calls ("call-ins"). Each person who placed bets with Washington was identified by a code name or a "book number". Individuals who placed bets with Washington selected their own book numbers. Washington kept records of the bets he received, including the number selected by the bettor, the amount of the bet, and the book number of the person who placed the bet. At the end of each week, the gross amount of the bets (the "tops") for each book number was totaled. Then, 75 percent of this amount was calculated to determine what each book number owed Washington (the "bottoms"). Washington's records did not differentiate between bets for which the person making the bet received a commission, and bets for which that person did not receive a commission (including personal bets), if any. Washington used the Michigan and Illinois lotteries *453 to determine the winning numbers. When there was a winner, Washington's employees referred to a spiral notebook (labeled "PHONE BOOK"). The phone book contained the book numbers, names, and telephone numbers of people who booked bets with Washington. After locating the book number of the person who placed the winning bet, the employee called the phone number listed and asked for the name appearing next to the book number. Washington and his employees also used the notebook when calling people to let them know how much they owed Washington. Paulette Guice (Guice) was one of Washington's employees who kept the books and records for the gambling business. Washington testified in United States v. Croffe, No. 88-50031-20 (E.D. Mich., July 18, 1988), about his gambling activities. He died on September 10, 1991, before the trial in this case. b. Petitioners' Involvement
Mr. Williams was involved with Washington's numbers business during most of 1986 and 1987. Mr. Williams placed personal bets directly with Washington. He also collected bets from others and turned them over to William Ashburn ("Smooth"). Smooth is listed in Washington's records. Mr. Williams gave Smooth *454 $ 7.50 for every $ 10 bet he placed with Smooth. Mr. Williams' book number was "CW". The following entry appears in Washington's spiral notebook, which was used to call winners: /785-9389
CW
James
785-6995/787-7526
When a bet placed under "CW" had a hit, Washington or one of his employees called 785-6995. This is the Williams' home phone number. The person calling would ask for James and inform him that he had a hit. If there was no answer at this number, or if James was not there, the person making the calls would then call the other phone numbers listed. These other numbers are not the Williams' phone numbers. Mr. Williams did not keep copies of betting slips or other records of his betting activities. In 1988, Mr. Williams was indicted and pled guilty to the charge of conducting an illegal gambling business. He was sentenced to 30 days in prison, and thereafter placed on probation for this offense. Petitioners filed joint income tax returns for the years at issue. They did not report any income from the gambling activity on their returns for 1986 or 1987. OPINION 1. Evidentiary Matters
We first consider two evidentiary issues raised by petitioners *455 concerning the admissibility of certain evidence. a. Former testimony of Mertis Washington
Respondent offered Mertis Washington's testimony in United States v. Croffe, supra, into evidence. Petitioners argue that Washington's testimony is inadmissible hearsay. They point out that their attorney did not have a chance to cross-examine Washington and assert that Maple Croffe, the defendant in that case, is not a predecessor in interest to petitioners. Rule 804(b) of the Federal Rules of Evidence provides several exceptions to the hearsay rule if the declarant is unavailable, which Washington indisputably was. Under rule 804(b)(1) of the Federal Rules of Evidence, former testimony of a declarant is admissible if the party against whom it is now offered, or a predecessor in interest, had an opportunity and similar motive to develop the declarant's testimony. Ms. Croffe and petitioners were indicted for their alleged involvement in illegal gambling activities. Washington testified about the gambling activities at Ms. Croffe's trial. We believe that Ms. Croffe, through her attorney at the Croffe trial, had an opportunity and similar motive as petitioners to cross-examine *456 Washington at the Croffe trial. Clay v. Johns-Manville Sales Corp., 722 F.2d 1289, 1294-1295 (6th Cir. 1983). Accordingly, Washington's testimony is admissible under rule 804(b)(1) of the Federal Rules of Evidence.
b. Testimony of Paulette Guice
Respondent examined Guice about the operations of Washington's gambling house, and records she used while employed there. Petitioners dispute both Guice's qualifications to testify about Washington's business records and whether the records are admissible as business records under rule 803(6) of the Federal Rules of Evidence. We believe Guice was sufficiently familiar with Washington's business and its records to be qualified to testify about them pursuant to rule 803(6) of the Federal Rules of Evidence.United States v. Colyer, 571 F.2d 941, 947 (5th Cir. 1978); Fernandez v. Chios Shipping Co., 542 F.2d 145, 154 (2d Cir. 1976). We also believe that the records are admissible as business records under rule 803(6) of the Federal Rules of Evidence.
2. Unreported Income
The next issue for decision is whether petitioners had unreported gambling activity income *457 of $ 22,563 for 1986 and $ 24,193 for 1987. Gross income includes "all income from whatever source derived," including illegal sources. Sec. 61; Rutkin v. United States, 343 U.S. 130, 137 (1952). Respondent's determination is presumed to be correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners claim that Mr. Williams placed personal bets (i.e., his own bets) with Washington, but they have no records to corroborate the extent, if any, of such bets. Petitioners would have had income on Mr. Williams' personal bets to the extent of his net winnings. Mr. Williams testified that the people he collected bets from would give him $ 7.50 for every $ 10. He testified that he did not have any income from collecting bets because he turned over all of the money given to him to a person he called Smooth. Sergeant Joseph Juhasz, the Michigan State police officer who investigated Washington's gambling house, testified that Mr. Williams received 10 percent of the amount of bets he turned in to Smooth. Guice testified that people placing bets with Washington owed him 75 percent of the bets they placed. We do not find credible *458 Mr. Williams; testimony that he did not receive income from his participation in the gambling business. Petitioners did not call any witnesses or otherwise corroborate Mr. Williams's testimony, and they failed to adequately explain conflicts with Sergeant Juhasz' and Guice's testimony. Petitioners did not keep records of Mr. Williams' gambling activities. They have not offered any evidence to show to what extent he placed personal bets or other bets for which he did not receive a commission. Washington's records show the amount of bets placed under Mr. Williams' book number, CW, for the years at issue. Respondent determined that the total amount of bets listed in these records was $ 7,521 for December 1986 and $ 96,770.91 for January through October 1987. The record does not contain copies of Washington's records before December 1986. To estimate the amounts of Mr. Williams' bets for January through November 1986, respondent multiplied the amount of bets for December 1986 by 12, arriving at $ 90,252 for bets placed in 1986. Resopndent determined that Mr. Williams' 25 percent share of the bets he placed was $ 22,563 in 1986 and $ 24,193 in 1987. Washington's records provide *459 a credible basis for determining petitioners' income from booking bets in 1986 and 1987. We think respondent's method of estimating the total amount of Mr. William's 1986 bets was reasonable. Because petitioners have offered no credible evidence to dispute respondent's determinations, and because they kept no records of Mr. Williams' gambling activities from which we can decide their income from these activities, we sustain respondent's determinations. Accordingly, we conclude that petitioners had gambling activity income in the amount of $ 22,563 for 1986 and $ 24,193 for 1987. 3. Fraud
The next issue for decision is whether petitioners are liable for additions to tax for fraud in 1986 and 1987 under section 6653(b)(1)(A) and (B). For purposes of section 6653(b), fraud means "actual, intentional wrongdoing," Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; McGee v. Commissioner, 61 T.C. 249, 256 (1973), *460 affd. 519 F.2d 1121 (5th Cir. 1975). Fraud "does not include negligence, carelessness, misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Castillo v. Commissioner, 84 T.C. 405, 408 (1985); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Respondent must establish: (1) That petitioner has underpaid taxes for each year, and (2) that some part of the underpayment was due to fraud. Sec. 6653(c); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). Fraud must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud, however, may be inferred from any conduct, the effect of which would be to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), or otherwise prevent the collection of taxes, Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; or where an entire *461 course of conduct establishes the necessary intent, Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stone v. Commissioner, 56 T.C. 213, 224 (1971). The courts have developed a number of objective indicators, or "badges", which tend to establish fraud, including: understatement of income; inadequate records; implausible or inconsistent explanations of behavior; engaging in illegal activities; and attempting to conceal illegal activities. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Fraud is not imputed from one spouse to another. In the case of a joint tax return, respondent must prove fraud as to each spouse charged with liability for the addition to tax. Section 6653(b)(3); Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); *462 Stone v. Commissioner, 56 T.C. 213, 227-228 (1971). Mr. Williams has exhibited each of the badges of fraud discussed above. He did not report the income from his gambling activities on petitioners' 1986 or 1987 returns. He did not keep copies of the betting slips or any other records from these activities. At trial, Mr. Williams testified that he did not receive a commission for placing bets -- a statement which we find implausible. Mr. Williams was indicted and pled guilty to conducting an illegal gambling business. Finally, Mr. Williams' failure to report income from his gambling activities indicates that he tried to conceal the illegal activities. We conclude that respondent has proven fraud by Mr. Williams by clear and convincing evidence. Respondent argues that Mrs. Williams should also be subject to the fraud addition because she knew her husband had income from illegal gambling and yet failed to either indicate this on petitioners' 1986 or 1987 returns or amend the returns to show it. Respondent has introduced no evidence which directly demonstrates that Mrs. Williams acted with fraudulent intent and, thus, has failed to prove fraud with respect *463 to her. Webster v. Commissioner, T.C. Memo. 1992-220. We conclude that Mr. Williams' conduct clearly and convincingly shows that he has committed fraud, but that Mrs. Williams' conduct does not show that she has done so. Accordingly, Mr. Williams is liable for additions to tax under section 6653(b)(1)(A) and (B) for 1986 and 1987, and Mrs. Williams is not. 3. Section 6661
The final issue for decision is whether petitioners are liable for an addition to tax for substantial understatement of tax under section 6661 for 1986 and 1987. Section 6661(a) imposes an addition to tax of 25 percent on any underpayment attributable to a substantial understatement of income tax in any taxable year. A substantial understatement exists if in any year the amount of the understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989); Woods v. Commissioner, 91 T.C. 88, 94 (1988). *464 If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii); sec. 1.6661-4(b) and (c), Income Tax Regs.
Petitioners have not argued that either of the reductions to this addition to tax apply to them. Petitioners have not sustained their burden of proving that they are not liable for additions to tax under section 6661. Accordingly, if, after respondent's determination, the amount of the understatement for 1986 or for 1987 exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return for either year, petitioners are liable for the section 6661 addition to tax for that year. Accordingly, Decision will be entered under Rule 155. Footnotes
1. Fifty percent of the interest due on the portion of the underpayment attributable to fraud.↩