IDA SILINSKY, Respondent, *v.* STATE-WIDE INSURANCE COMPANY, Appellant.

Second Department, April 22, 1968.

*Gordich & Cohen (Horace M. Cohen* and *John J. DeLucia* of counsel), for appellant.

*Margolies & Bernstein (Jerome J. Margolies* of counsel), for respondent.

BRENNAN, J. This action was commenced on February 19, 1965 by a '' named insured '' (a regular member of the insured's household) under an automobile liability policy issued by the defendant, for reimbursement of medical expenses. On the respective motions of the parties for summary judgment the moving affidavits reveal that the plaintiff sued alleged tort-feasors to recover damages for injuries sustained as a result of an accident which occurred on June 27, 1963; that notice of claim was given to the defendant about January 31, 1964, when the plaintiff first became aware that she could benefit by a provision in the subject policy; that the defendant had knowledge of the suit which the plaintiff had instituted and it notified the alleged tort-feasors of its subrogation rights; that the defendant had given a 50% reduction in its premium rate for the privilege of obtaining subrogation; that the defendant has not paid the plaintiff; and that on November 27, 1964 the plaintiff executed a general release to the alleged tort-feasors in settlement of her pending litigation for $13,000. Attached to the motion papers was a copy of '' Endorsement No. U71 '', which in pertinent part provides: '' 6. In the event of any payment under the ' Expenses for Medical Services ' or any ' Coverage C— Medical Payments ' provisions of this policy, the Company shall be subrogated to all the rights of recovery therefor which the

injured person, or anyone receiving such payment, may have against any person or organization. The injured person shall execute and deliver such papers and instruments and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.''

The Judge at the Civil Court noted that the subrogation clause was prima facie valid, but further observed that the determination of these motions did not revolve around that issue. He held that the defendant's unexplained delay between January 31, 1964 and November 27, 1964 in failing to pay the plaintiff estopped the defendant from asserting any affirmative defenses it may have had. The court then made an order granting the plaintiff's motion for summary judgment and denying the defendant's cross motion for similar relief. The Appellate Term affirmed the order.

The defendant urges that the plaintiff is estopped from maintaining this action because she failed to serve her medical reports and proofs of loss '' as soon as practicable '', pursuant to the policy provisions. The record reveals that the plaintiff notified the defendant of her claim on January 31, 1964 and filed the proper papers by December 16, 1964 [1]. During this period the parties were engaged in '' constant communication '' regarding the plaintiff's proofs of loss and, in the interim, she forwarded medical documents which were accepted by the defendant [2]. Such activity on the part of the defendant estops it from asserting that the plaintiff failed to file the aforementioned papers '' as soon as prácticable '' (cf. *Safeguard Ins. Co.* v. *Trent,* 29 A D 2d 780; *Allstate Ins. Co.* v. *Bianco,* 28 A D 2d 676).

The defendant also asserts that the plaintiff's claim is barred by virtue of the general release given to the tort-feasors. The authorities are in agreement that a release given to a tort-feasor who has knowledge of the insurer's rights will not preclude the insurer from enforcing its right of subrogation against the wrongdoer (*Ocean Acc. & Guar. Corp.* v. *Hooker Electrochemical Co.,* 240 N. Y. 37; *Camden Fire Ins. Assn. of Camden* v *Bleem,* 132 Misc. 22; 31 N. Y. Jur., Insurance, § 1632). In the case at bar there is no dispute that the tort-feasors had knowledge of the defendant's subrogation rights. Consequently, the

---

1. This information is contained in the papers upon defendant's motion (denied by an order of the Civil Court dated February 18, 1966) to reargue and reconsider, on new or additional facts, its cross motion for summary judgment; we have reviewed the order of February 18, 1966 pursuant to CPLR 5517 (subd. [b]).

2. *Ibid.*

plaintiff is not estopped from maintaining this action as nothing was done to prejudice the defendant's rights (see *Connecticut Fire Ins. Co.* v *Erie Ry. Co.,* 73 N. Y. 399; 16 Couch Insurance [2d ed.], §§ 61:190-61:193).

The defendant further asserts that the plaintiff will be unjustly enriched by a double recovery. The plaintiff, for her part, urges that even if she has received medical expenses in her settlement (which she does not concede), the collateral source rule applies.

The majority rule in the United States is that payment from collateral sources does not reduce the amount recoverable in a personal injury action against the tort-feasor (*Coyne* v *Campbell,* 11 N Y 2d 372, 374; 1957 Report of N. Y. Law Rev. Comm., p. 221 *et seq.* [Act, Recommendation and Study Relating to the Effect of Collateral Payments on Recovery for Personal Injury]). Otherwise the tort-feasor would obtain an undeserved windfall. Accordingly, it has been held that insurance proceeds paid to an insured plaintiff are from a collateral source and not allowable in mitigation of damages (*Healy* v. *Rennert,* 9 N Y 2d 202; *Cady* v. *City of New York,* 14 N Y 2d 660, affg. 19 A D 2d 822). The theory is that it is unfair to require the insured to pay for his own injuries where he pays for the coverage (Law Rev. Comm. Report, *supra,* p. 239).

New York has created exceptions to the collateral source rule and, as the leading exponent of the minority view, has held that gratuitous payments (or services) supplied to the injured plaintiff are not part of the damages recoverable from a tort-feasor (*Drinkwater* v. *Dinsmore,* 80 N. Y. 390; *Coyne* v. *Campbell, supra*; Law. Rev. Comm. Report, *supra,* p. 252). However, our courts have strictly construed *Drinkwater* and, consequently, we recognize that " the minority rule will not be in effect when the plaintiff has in some way paid for his benefits, or is absolutely or conditionally liable to repay his benefactor, *or when the source of the benefit is subrogated to plaintiff's rights against defendant* " (Law Rev. Comm. Report, *supra,* p. 226 [emphasis supplied], p. 238 [and cases cited]).

In neither *Drinkwater* nor *Coyne* were the gratuitous benefactors under any obligation to make payments or render services. In the case at bar, although the plaintiff did not effect this coverage or contribute to the fund, the defendant was under a contractual obligation to pay her. If the plaintiff had recovered from the insurer and sued the tort-feasor, we would be of the opinion that the latter could not plead such recovery in reduction of damages. In that situation, the plaintiff as a third-

party beneficiary to the contract should have the same rights as the insured who purchased the coverage.

None of the cases previously discussed are dispositive of the issue presented here. The question posed is: Does the collateral source rule apply against the *insurer* when sued under a policy by a named insured who, assuming for this purpose, has recovered medical expenses from the tort-feasor? We conclude that the answer must be in the negative. It is the policy of this court to prevent double recoveries and avoid unjust enrichment by an injured person (*Moore v. Leggette*, 24 A D 2d 891, affd. 18 N Y 2d 864; cf. *Wyman v. Allstate Ins. Co.*, 29 A D 2d 319). In our opinion, the insurer and the wrongdoer stand on a very different footing; and different equities and policies must be weighed when either attempts to assert the collateral source rule against the injured person. We have concluded that, if the insurer can prove that the plaintiff recovered medical expenses from the tort-feasor, the insurer should be permitted to plead that recovery in bar to a suit on the policy. In this manner the plaintiff recovers for her actual economic loss and the ultimate burden is placed upon the perpetrator of the injury.

Since it is our opinion that the collateral source rule is not applicable to these facts, we must determine the effect of the plaintiff's settlement with the tort-feasors.

It is the general rule that a release given in connection with a settlement and discontinuance of litigation will cover all claims involved in the litigation, or that could have been adjudicated therein, if the release is in general terms (49 N. Y. Jur., Release and Discharge, § 37; see *Lucio v. Curran*, 2 N Y 2d 157; *Barnes v. American China Development Co.*, 131 App. Div. 40). It may be argued that if the complaint in the prior action sought reimbursement for medical expenses (which the record before us does not reveal) and a general release was executed, the release must be deemed to have included payment for the medical expenses. However, the general rule does not apply where, as here, the released defendants are not the parties sued in the subsequent action.

Under the circumstances existing it was incumbent upon the defendant to establish payment by the tort-feasors for all damages sustained (*Di Sabato v. Soffes*, 9 A D 2d 297). It failed to produce any evidence that the tort-feasors paid full damages.

While it might be contended that such evidence is solely within the knowledge of the plaintiff (or the tort-feasors) and therefore the court should have denied the plaintiff's motion or ordered a continuance to permit disclosure (CPLR 3212, subd. [f]), such contention may not be sustained where the party opposing sum-

mary judgment has failed to ascertain the truth due to its own voluntary inaction (*Tausig & Son* v. *Providence Washington Ins. Co.*, 28 A D 2d 279, affd. 21 N Y 2d 1022; Wachtell, N. Y. Prac. under the CPLR [2d ed., 1966], p. 176; and see *Overseas Reliance Tours & Travel Serv.* v. *Sarne Co.*, 17 A D 2d 578). Approximately 10 months elapsed from the joinder of issue to the hearing on the motions for summary judgment. The defendant never requested an order for disclosure and apparently took no other steps to discover the truth and thus it is too late for the defendant to inquire into the settlement question. We are of the opinion that under these circumstances, where the defendant failed to show a genuine issue of fact, what was paid for in settlement is a question of law and we hold that the settlement did not include medical expenses (*Hamilton Fire Ins. Co.* v. *Greger*, 246 N. Y. 162).

There are no triable issues of fact presented and summary judgment was properly granted to the plaintiff. This disposition does not require us to pass upon the validity of the subrogation clause or the claim that the defendant, by its processing of the plaintiff's claim over a period of more than 10 months, waived its right to subrogation. However, if those questions were before us, we would resolve them in the defendant's favor. The defendant's conduct was not sufficient to constitute a waiver of its right to subrogation (cf. *Tindall* v. *Continental Ins. Co.*, 252 App. Div. 47; *Sun Ins. Office* v. *Hohenstein*, 128 Misc. 870; 31 N. Y. Jur., Insurance, § 1623; 16 ALR 2d 1261).

We have indicated that in our view the subrogation clause is valid. As will be hereafter discussed, we are of the opinion that medical payment coverage constitutes an indemnity contract and a subrogation clause to that extent is valid (see *Suttles* v. *Railway Mail Assn.*, 156 App. Div. 435; 60 Mich. L. Rev. 841, Kimball and Davis, The Extension of Insurance Subrogation).

Most States, including New York, have a public policy prohibiting the transfer of personal injury claims (General Oligations Law, § 13–101). The majority of these States that have had occasion to pass upon this problem have upheld the validity of the subrogation clause, whether contained in an automobile liability policy or in a health and hospitalization plan (*Higgins* v. *Allied Amer. Mut. Fire Ins. Co.*, 36 U. S. Law Week 2445 [D. C. App., Jan. 19, 1968]; *DeCespedes* v. *Prudence Mut. Cas. Co. of Chicago*, 193 So. 2d 224 [Fla.]; *Shelby Mut. Ins. Co. of Shelby* v. *Birch*, 196 So. 2d 482 [Fla.]; *Bernardini* v. *Home & Auto. Ins. Co.*, 64 Ill. App. 2d 465; *Michigan Med. Serv.* v. *Sharpe*, 339 Mich. 574; *Davenport* v. *State Farm Mut. Auto. Ins.*

*Co.,* 81 Nev. 361; *Smith* v. *Motor Club of America Ins. Co.,* 54 N. J. Super. 37, affd. 56 N. J. Super. 203, certification den. 30 N. J. 563; *Travellers Ins. Co.* v. *Lutz,* 3 Ohio Misc. 144; *Hospital Serv. Corp. of Rhode Is.* v. *Pennsylvania Ins. Co.,* 227 A. 2d 105 [R. I.]; *Wilson* v. *Tennessee Farmers Mut. Ins. Co.,* 411 S. W. 2d 699 [Tenn.]; *Associated Hosp. Serv.* v. *Milwaukee Auto. Mut. Ins. Co.,* 33 Wis. 2d 170; *contra, Harleysville Mut. Ins. Co.* v. *Lea,* 2 Ariz. App. 538; *Fifield Manor* v. *Finston,* 54 Cal. 2d 632; *Peller* v. *Liberty Mut. Fire Ins. Co.,* 220 Cal. App. 2d 610; but cf. *Tryper* v. *Meritplan Ins. Co.,* Cal. Super. Ct., Los Angeles County, App. Dept. [No. Civ A 11085], decided Dec. 27, 1965 and *Block* v. *California Physicians' Serv.,* 244 Cal. App. 2d 266; *Wrightsman* v. *Hardware Dealers Mut. Fire Ins. Co.,* 113 Ga. App. 306; *Travelers Ind. Co.* v. *Chumbley,* 394 S. W. 2d 418 [Mo.]; *Forsthove* v. *Hardware Dealers Mut. Fire Ins. Co.,* 416 S. W. 2d 208 [Mo. App.]).

The majority have reasoned that (1) where the official who had powers similar to those of the New York Superintendent of Insurance has not eliminated the clause, it is prima facie valid (see Insurance Law, §§ 10, 141); (2) medical payments are an indemnifiable loss and an insurer can be subrogated to that extent; (3) subrogation is merely a substitution of parties and not within the public policy prohibiting assignments of personal injury claims (see General Obligations Law, § 13-109); and (4) subrogation prevents a double recovery to the insured and hopefully the insurer reflects its recoveries in the computation of premium rates.

It has been held in this State that this type of subrogation clause and trust receipts executed pursuant to obtaining medical payments from an insurer are valid, at least to the extent that they provide a lien on the proceeds recovered from the tortfeasor (*Miller* v. *Liberty Mut. Fire Ins. Co.,* 48 Misc 2d 102, affd. 29 A D 2d 982). Furthermore, the common-law public policy codified in section 13-101 of the General Obligations Law is not so strong as to preclude an assignment of proceeds of personal injury claims prior to judgment or settlement (*Williams* v. *Ingersoll,* 89 N. Y. 508; *Grossman* v. *Schlosser,* 19 A D 2d 893). In our opinion, subrogation as to expenditures under a medical payments contract does not violate the statute and this interpretation certainly " will not cause objectionable results or cause inconvenience, hardship, injustice or mischief or lead to absurdity " (*People* v. *Ryan,* 274 N. Y. 149, 152). Moreover, " our conclusion is firmly supported not only by considerations of reason and basic fairness but also by

well-considered cases in other jurisdictions '' (*Derby* v. *Prewitt*, 12 N Y 2d 100, 106).

The order should be affirmed, with $30 costs and disbursements.

CHRIST, Acting P. J., RABIN, HOPKINS and MUNDER, JJ., concur.

Order affirmed, with $30 cost and disbursements.