OPINION OF THE COURT
Wilmer J. Patlow, J.
In this action by a former employee to recover damages for *1001 breach of employment contract, the jury returned a verdict in favor of plaintiff. The court reserved for itself the question of whether or not the unemployment compensation benefits received by plaintiff during the period following her wrongful discharge should, in mitigation of damages, be deducted from her ultimate award.
In response to that question plaintiff argues, inter alla, that the unemployment insurance benefits are compensation derived from a collateral source and as such should not operate to reduce the damages which are otherwise recoverable from these defendants. On the other hand, defendants contend that the purpose of damages for breach of contract is to place the injured party in the position he would have been in had the contract been fully performed, and that if the unemployment insurance benefits are not taken into account to reduce damages, plaintiff here will recover an amount greater than she would have received had she completed her term of employment with defendants.
At the outset, the court determines that the collateral source doctrine, which originated in tort, is nonetheless applicable to the case at bar, although sounding in contract (see Gusikoff v Republic Stor. Co., 241 App Div 889; 13 NY Jur, Damages, § 150; cf. United Protective Workers of Amer., Local No. 2 v Ford Motor Co., 223 F2d 49, 52-54).
The collateral source doctrine in New York State, as in most jurisdictions, holds that as a general rule damages cannot be mitigated or reduced because of payments received by an injured party from a source wholly independent of and collateral to the wrongdoer (Silinsky v State-Wide Ins. Co., 30 AD2d 1, 4; Szybura v City of Elmira, 28 AD2d 1154, 1155; 22 Am Jur 2d, Damages, § 206; 13 NY Jur, Damages, § 150). Thus, for example, it is well established that damages recoverable for a wrong are not diminished even though the injured party has been wholly or partly indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute (Healy v Rennert, 9 NY2d 202, 206; see, also, Drinkwater v Dinsmore, 80 NY 390, 392; Silinsky v State-Wide Ins. Co., supra, p 4). However, it has also clearly been stated that where the wrongdoer is a person prudent enough to take out a policy of insurance to indemnify plaintiff, the wrongdoer alone having paid the consideration, such wrongdoer is entitled to the benefit of his foresight and to a reduction of damages to the extent these have been *1002 defrayed by the policy (Moore v Leggette, 24 AD2d 891, 892, affd 18 NY2d 864).
New York State has long belonged to a minority of jurisdictions which create an exception to the collateral source rule for wholly gratuitous services and payments received by an injured plaintiff for which he gave no consideration and which he is not obligated to repay, absolutely or contingently (Coyne v Campbell, 11 NY2d 372, 373-376; Drinkwater v Dinsmore, supra, pp 392-393; Silinsky v State-Wide Ins. Co., supra, p 4). This exception to the collateral source rule originated in Drinkwater v Dinsmore (supra, p 393) where the Court of Appeals concluded that lost wages could form no part of a plaintiff’s damages where the defendant was able to show "that for some particular reason the plaintiff would not have earned any wages if he had not been injured, or that he was under such a contract with his employer that his wages wen, on without service, or that his employer paid his wages from mere benevolence.” The Drinkwater doctrine was reaffirmed by the Court of Appeals in Coyne v Campbell (11 NY2d 372, 374, supra). However, the United States Court of Appeals for the Second Circuit recently examined New York law and, despite the reaffirmance in Coyne, determined that in fact only a portion of the Drinkwater doctrine now survives in this State (Klein v United States, 339 F2d 512, 517). The United States Court of Appeals in Klein (supra, pp 517-518) stated that "[wjhile 'gratuitous benefits received by a plaintiff from his employer (benevolence) still bar recovery for lost compensation, 'benefits received by a plaintiff as a result of some consideration that has been previously extended’ to his employer (contract) no longer preclude such recovery. Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308, 316”. Indeed, although early New York State case law reflects a strict adherence to Drinkwater (see Spalding v Bush, 253 App Div 790), cases decided after Coyne make a distinction between gratuitous benefits paid by an employer, which are deductible from plaintiffs damages, and disability, pension, vacation and other "fringe” benefits which are not (see Carroll v Roman Catholic Diocese of Rockville Centre, 26 AD2d 552, 553, affd 19 NY2d 658; Womble v Michelson, 22 AD2d 815; Meisner v Healey, 18 AD2d 368, 371).
The question presented to this court apparently has not been addressed under the more recent New York case law, but it often arises in analogous situations, for instance, where *1003 there has been an award of back pay following a labor dispute. There has been no uniform resolution of the issue in these other contexts (see Labor Bd. v Gullett Gin Co., 340 US 361 [NLRB has discretionary power to refuse to deduct unemployment insurance benefits from back-pay award]; Marshall v Goodyear Tire & Rubber Co., 554 F2d 730, 736 [no abuse of discretion for United States District Court in age discrimination case to decline to deduct unemployment insurance benefits from back-pay award]; and Local Lodge No. 790 of Int. Assn. of Machinists & Aerospace Workers, AFL-CIO v Champion Carriers, 470 F2d 744 [unemployment compensation benefits should not have been deducted from arbitrator’s back-pay award]; cf. International Assn. of Machinists & Aerospace Workers, Lodge No. 335 v Chicago Pneumatic Co., 452 F Supp 592 [unemployment compensation benefits properly deductible from arbitrator’s back-pay award]; Matter of Weimer v Board of Educ., 74 AD2d 574 [unemployment insurance to be deducted from back salary due petitioner from board of education]; District 1199 Nat. Union of Hosp. & Health Care Employees, RWDSU, AFL-CIO v State Div. of Human Rights, 58 AD2d 793 [unemployment insurance properly deductible from back-pay award granted by Commissioner of Human Rights]).
After examining the above-cited authorities this court determines that unemployment insurance benefits are in the nature of collateral "fringe” benefits extended to an employee in consideration for his previous services, rather than wholly gratuitous payments flowing from the employer.
In reaching this conclusion, the court places great reliance upon the reasoning of the United States Supreme Court in Labor Bd. v Gullett Gin Co. (340 US 361, supra). The court in Gullett Gin considered and rejected the argument, which supports defendants here, that State unemployment benefits are not collateral benefits but are instead direct benefits from the employer, as they are derived from the employer’s tax contributions. The court stated (supra, p 364): "Payments of unemployment compensation were not made to the employees by respondent [employer] but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent respondent helped to create the fund. However,the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the *1004 entire state. [Citations omitted.] We think these facts plainly show the benefits to be collateral.”
This court, following Gullett Gin, finds that the payments received by plaintiff from New York State’s Unemployment Insurance Fund are not attributable to her former employers, the defendants. Although the defendants are obligated by statute to contribute to the State Unemployment Insurance Fund (see Labor Law, § 570 et seq.), the fund itself is the sole source of benefits (Labor Law, § 550, subd 3). The purpose of the payments is not to discharge any obligation running from the employer to the employee, but rather to further the stated public policy of New York State to spread and lighten the burden of unemployment which falls with great force upon the unemployed worker and his family (Labor Law, § 501).
It could also be argued on behalf of defendants here that even though the unemployment benefits are collateral, they are nonetheless gratuitous, and thus fall within New York State’s exception to the collateral source rule. However, this court finds that the benefits were granted in exchange for services previously rendered by plaintiff. It is clear that plaintiff received the benefits only by meeting certain eligibility requirements which include having worked a certain number of weeks at a certain minimum salary during the period preceding the claim for unemployment insurance (see Labor Law, § 527).
The United States Supreme Court decision in Labor Bd. v Gullett Gin Co. (340 US 361, supra) is further instructive in rejecting the argument, advanced on behalf of defendants here, that plaintiff would be made more than whole in the event the unemployment insurance benefits are not deducted from the damages. The court reasoned (supra, p 364) that plaintiff is unlikely to be made more than whole even if allowed to retain collateral benefits since collateral losses are not taken into consideration in framing the award.
The court in Gullett Gin (supra, pp 364-365) also noted in this regard the possibility that the State might act to recoup its payments, a practice which varies from State to State. It is entirely within the power of New York State to recover the unemployment insurance benefits paid to a recipient who later receives back pay for the period of time he was unemployed (see Labor Law, § 597, subds 3, 4; Matter of Talkov [Catherwood], 33 AD2d 1084; Matter of Steward [Corsi], 279 App Div 500; Matter of Skutnik [Corsi], 268 App Div 357, mot *1005 for lv to opp den 294 NY 645). If the State does require plaintiff to repay her unemployment insurance benefits it cannot be said that she will be made more than whole by receiving the entire amount of the award. Furthermore, to permit the deduction of unemployment insurance from the award would leave the State without recourse against plaintiff (see Matter of Cohen [Levine], 44 AD2d 286).
In addition, if defendants were to prevail and receive the benefit of the unemployment compensation paid to plaintiff, it would violate the stated public purpose of New York State’s unemployment insurance laws which were enacted to protect the interests of the involuntarily unemployed worker and his family.
Based upon all of the foregoing, this court finds that the unemployment compensation benefits paid to plaintiff cannot be deducted from her award for breach of an employment contract.