**IDEAL MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**KOREAN REINSURANCE CORPORA-TION (a/k/a Korean Reinsurance Co. and Korean Re), Defendant.**

No. 83 Civ. 8500 (CBM).

United States District Court, S.D. New York.

April 13, 1987.

Mudge, Rose, Guthrie, Alexander & Ferdon by William F. Costigan, New York City, for plaintiff.

D'Amato & Lynch by Thomas F. Breen, New York City, for defendant.

## OPINION

MOTLEY, District Judge.

Plaintiff has moved for an order of foreign attachment pursuant to Fed.R.Civ.P. 12 and N.Y.Civ.Prac. L. & R 6201 *et seq.* to secure defendant's trust account number 199114, Citicorp Center, 153 East 53rd Street, New York, New York. For the reasons discussed below, plaintiff's motion is granted.

## FACTS

In this action, plaintiff, Ideal Mutual Insurance Co. ("Ideal"), complains that the defendant, Korean Reinsurance Company (KRIC), failed to pay amounts due Ideal under contracts for reinsurance. Ideal was placed into rehabilitation by the New York Insurance Department in December of 1984, and the Superintendent of Insurance of the State of New York is prosecuting Ideal's claims as liquidator. KRIC is a foreign corporation headquartered in Seoul, South Korea.

At the inception of this litigation, Ideal sought and received an *ex parte* order of attachment of KRIC's account in the

amount of $256,861.31 to secure the damages Ideal claimed in its original complaint ($223,301.62) plus interest. This court later confirmed the attachment after briefing and oral argument from both parties. KRIC decided to post a bond in lieu of attachment, and the attachment was vacated by stipulation so ordered by the court.

Ideal later amended its complaint to plead substantially higher liquidated damages of $610,095.91. The increase in damages claimed resulted primarily from the addition of amounts that Ideal's London reinsurance brokers, Wigham Poland, Ltd. ($296,253.89) and Hogg Robinson & Gardner Mountain International, Ltd. ($67,-403.95), had advanced to Ideal when KRIC refused to pay the amounts it allegedly owes on the reinsurance contracts. Wigham Poland and Hogg Robinson had placed these reinsurance contracts in the London market, and thus acted as intermediaries in the agreement between Ideal and KRIC.

Ideal now moves for an order of attachment to secure the difference between the bond that KRIC has already posted in lieu of attachment and the amount sought in its amended complaint, plus interest.

### DISCUSSION

Rule 64 of the Federal Rules of Civil Procedure provides that a federal district court may order remedies that are available under state law regarding the seizure of property for the purpose of securing satisfaction of a judgment. Section 6201 of the New York C.P.L.R. provides that a court may grant an Order of Attachment when the defendant is a foreign corporation not qualified to do business in New York.

In its Memorandum Opinion confirming the earlier attachment of KRIC's account, this court found that attachment of the amount Ideal claimed in its original complaint was proper because KRIC is a foreign corporation. *Ideal Mutual Insurance Co. v. Korean Reinsurance Corp.*, 83 Civ. 8500, slip op. at 5 (S.D.N.Y. September 11, 1984) [Available on WESTLAW, DCT database]. The court also held that Ideal had demonstrated a substantial likelihood of prevailing on the merits, *Id.* at 4–5, and

that KRIC's Citibank account is attachable property under New York law, *Id.* at 5. There is no evidence that the circumstances that led to these conclusions have changed since the court rendered this earlier decision. Therefore, there is no need to revisit these issues in this opinion to the extent they have already been addressed.

The present motion does, however, present a question that was not at issue when the court made its prior decision. The additional amounts that Ideal seeks to secure through this motion for attachment were added to its amended complaint almost exclusively for the purpose of capturing amounts that its brokers, Wigham Poland and Hogg Robinson, advanced to Ideal on the reinsurance contracts with KRIC. KRIC contends that the brokers made these payments to Ideal gratuitously, and that the payments thus are not recoverable from KRIC because of an exception recognized in New York to the collateral source doctrine. It follows, according to KRIC, that Ideal cannot show a substantial likelihood that it will prevail at trial to the extent that it claims amounts already advanced to it by its brokers.

The collateral source doctrine holds that, as a general rule, a plaintiff may recover damages that include amounts for which the plaintiff has already been compensated through sources wholly independent of and collateral to the wrongdoer. *See Silinsky v. State-Wide Insurance Company*, 30 A.D.2d 1, 289 N.Y.S.2d 541, 546 (2d Dept. 1968); *Rutzen v. Monroe County Long Term Care Program, Inc.*, 104 Misc.2d 1000, 429 N.Y.S.2d 863, 864 (Sup.Ct.1980). The classic application of the doctrine is to allow a plaintiff in a personal injury case to recover amounts that have already been paid under an insurance policy that the plaintiff acquired independently of the defendant. Although the doctrine developed in tort actions, it applies equally in actions for breach of contract. *Rutzen*, 429 N.Y. S.2d at 864.

New York has long been among a minority of states that recognize an exception to the collateral source doctrine under which payments or services provided *gratuitous-*

*ly* to an injured plaintiff are not to be included in recoverable damages. *See Drinkwater v. Dinsmore,* 80 N.Y. 390; *Coyne v. Campbell,* 11 N.Y.2d 372, 374, 230 N.Y.S.2d 1, 2, 183 N.E.2d 891 (1962). A typical example of the application of this so-called *Drinkwater* exception is found in the New York Court of Appeals' decision in *Coyne,* in which a doctor suing for personal injury was denied recovery for the value of medical services given him gratuitously, as a professional service. 230 N.Y.S.2d at 2, 183 N.E.2d 891. KRIC claims that the brokers' payments fall within the *Drinkwater* exception.

New York courts have construed the *Drinkwater* exception strictly. *Silinsky,* 289 N.Y.S.2d at 546. The rule will not be applied "when the plaintiff has in some way paid for his benefits, or is absolutely or conditionally liable to repay his benefactor, or when the source of the benefit is subrogated to plaintiff's rights against defendant." *Id.* (emphasis omitted) (*quoting* 1957 Report of N.Y.Law Rev.Comm. at 226, and *citing* Report at 238 (and cases cited)).

■ New York courts have not yet applied the collateral source doctrine in the context presented here, in which a broker advances amounts to a client allegedly owed to the client under reinsurance contracts arranged by the broker. In the absence of direct New York authority, a federal court sitting in diversity must make its best estimate of how New York's highest court would rule in the case before it. *Francis v. INA Life Insurance Co.,* 809 F.2d 183, 185 (2nd Cir.1987).

At the outset of this endeavor, it is important to note that there is no evidence that the relationship between Ideal and its brokers was anything but strictly commercial. It is thus difficult to imagine that the payments the brokers made to Ideal were "gratuitous" in the same sense that services rendered to an injured person or wages paid by an employer to a disabled person are sometimes furnished gratuitously.

In addition, the evidence on which both parties have relied in this motion indicates that the brokers' payments were not permanent gifts to Ideal, but were closer to the nature of advances, which Ideal would repay to the brokers as soon as it received payment from KRIC on the reinsurance contracts.

Both parties quote the deposition testimony of Ideal's Chief Financial Officer, Frederick A. Vyn, in their argument on this point. While it seems that Ideal is not under a written contractual obligation to repay the advances to Ideal, Mr. Vyn's testimony indicates that the understanding between Ideal and its brokers was that the brokers would recoup their advances as soon as KRIC paid its alleged obligations to Ideal. Breen Affidavit, Exhibit A at 283.

In addition, the brokers have filed proofs of claim with Ideal's liquidator to recoup the advances they have made to Ideal, which also indicates that the payments were not seen as permanent gifts. Thus, from the evidence presently before the court, it seems that Ideal is likely to be successful at trial in showing that the brokers' payments were not gratuitous, and were made with an understanding that they would be repaid if and when KRIC paid Ideal on the original reinsurance contract.

Finally, if it is true, as Ideal contends, that it is common industry practice for brokers to pay to their clients amounts that are left unpaid under reinsurance contracts, then a rule of law that would allow KRIC to escape payment in this case solely because of the brokers' payments would provide incentive for other reinsurance companies to renege on similar contracts in the hope that brokers would likewise, in effect, pay the reinsurance companies' debts for them. The New York Court of Appeals could not have intended such a result when it established the *Drinkwater* exception to the collateral source doctrine.

KRIC makes two further points that must be addressed. First, KRIC notes that Hogg Robinson has filed an action in Great Britain in which it seeks, among other things, to recover directly from KRIC the amount that Hogg Robinson advanced to Ideal. KRIC claims that there is a possibil-

ity that it will be held liable for this amount twice, once by this court and once by the British court. However, Ideal has stated that it has no intention of extracting a double recovery. Plaintiff's Memorandum in Reply at 5. Ideal has also submitted an affidavit of Hogg Robinson's British solicitor in which he affirms that he will drop the advances to Ideal from his British suit. Affidavit of Julian How. Thus there seems to be no danger that KRIC will be held liable for the amount twice.

Second, KRIC points out that the question of whether or not the brokers' advances will actually be returned to the brokers if Ideal recovers these amounts in court from KRIC is complicated by the fact that Ideal has been placed into rehabilitation by the New York Insurance Department. Letter from Thomas Breen, December 17, 1986 at 2. KRIC argues that the brokers are unsecured creditors and, as such, probably will not receive full repayment of any amount this court might award to Ideal. Thus, according to KRIC, the broker's payments fall within the *Drinkwater* exception as permanent gifts.

KRIC's argument is not likely to succeed at trial. Simply because Ideal ultimately may not be able to repay the brokers fully does not make the broker's initial advances gratuitous payments under the collateral source doctrine. KRIC's liability to Ideal on the reinsurance contracts should not turn on the way in which Ideal's liquidator eventually distributes its assets.

## CONCLUSION

Ideal's motion for an order of foreign attachment pursuant to Fed.R.Civ.P. 12 and N.Y.Civ.Prac. L. & R 6201 *et seq.* to secure defendant's trust account number 199114, Citicorp Center, 153 East 53rd Street, New York, New York is granted.