(June 5, 1979)

■ Aetna Casualty & Surety Company, Respondent, v Mortimer Schulman et al., Appellants.—Order and judgment (two papers), Supreme Court, New York County, entered September 7, 1978 and September 19, 1978, respectively, granting plaintiff's motion for summary judgment, unanimously affirmed, with one bill of costs and disbursements on the appeal. Plaintiff had issued a policy of liability insurance to defendant Mortimer Schulman providing coverage from December 10, 1975 to December 10,

1976. The policy provided coverage for "extended economic loss" consisting of economic loss as a result of accidents occurring without the State and included a subrogation clause, subrogating the insurer to the extent of any payments made for extended economic loss: "In the event of any payment for extended economic loss, the Company is subrogated to the extent of such payments to the rights of the person to whom, or for whose benefit, such payments were made. Such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing to prejudice such rights." On March 8, 1976, defendants applied to plaintiff to recover benefits for economic loss resulting from an accident which occurred in Virginia on January 6, 1976. Thereafter, on April 29, 1976, they executed subrogation agreements under which plaintiff was to be subrogated to any rights which defendants had to recover against any persons because of the accident to the extent of any payments received from the carrier. Subsequently, on December 15, 1977, plaintiff paid Mortimer Schulman $14,710 and Marcia Schulman $5,194, representing their claims for benefits for economic loss. After commencement of the action in Virginia by defendants against the owner and operator of the other vehicle, defendants settled with the Virginia tort-feasors on January 28, 1977, executing general releases upon payment to Mortimer of $9,500 and to Marcia of $7,500 in satisfaction of their personal injury claims. Mortimer also released the tort-feasors from property damage in consideration for the receipt of $4,012. In the present action, plaintiff asserts that the settlement between defendants and the Virginia tort-feasors was made without its knowledge or consent and violated the terms of the subrogation agreement contained in the policy. The insurer states that, when it brought action in Virginia against the owner and operator of the other vehicle involved in the accident, it was compelled to consent to dismissal when confronted with the general releases which had been executed by defendants. It thereupon brought this action to recover from its insured to the extent of any payment received by them from the Virginia tort-feasors. We are in agreement with the conclusion reached by Special Term that, on this record, the action taken by defendants substantially affected the insurer's rights under the subrogation clause. Defendants have offered no affirmative proof to substantiate their conclusory assertion that the Virginia settlement amounted to no more than a settlement of defendants' claims for recovery of pain and suffering and did not include economic loss, for which recovery had already been obtained from plaintiff. To the contrary, in settling the Virginia action, defendants executed in New York general releases releasing the Virginia tort-feasors with respect to any claim which defendants might have. Nor is the situation here similar to *Silinsky v State-Wide Ins. Co.* (30 AD2d 1), relied upon by defendants. There the insurer had knowledge of the suit which the insured had brought against the alleged tort-feasors and had notified them of its subrogation rights before they settled. As the Appellate Division, Second Department, observed (pp 3-4): "The defendant also asserts that the plaintiff's claim is barred by virtue of the general release given to the tort-feasors. The authorities are in agreement that a release given to a tort-feasor who has knowledge of the insurer's rights will not preclude the insurer from enforcing its right of subrogation against the wrongdoer * * * In the case at bar there is no dispute that the tort-feasors had knowledge of the defendant's subrogation rights. Consequently, plaintiff is not estopped from maintaining this action as nothing was done to prejudice the defendant's rights". The situation in the present case is different. No proof has been offered by defendants in opposition to plaintiff's motion for summary

relief to establish that the Virginia tort-feasors had knowledge of plaintiff's subrogation rights. Defendants have failed to meet their burden required in opposing a motion for summary judgment. A party in opposition to such a motion must assemble and lay bare affirmative proof to establish that genuine material issues of fact exist *(Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Shaw v Time-Life Records,* 38 NY2d 201; *Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338; *Di Sabato v Soffes,* 9 AD2d 297). Bare, conclusory allegations are insufficient for this purpose. The affidavit of defendants submitted in opposition to the motion fails to raise a genuine triable issue. The affirmation of counsel, who is clearly without requisite knowledge of the facts, is without probative value *(Philip A. Feinberg, Inc. v Varig, S. A.,* 80 Misc 2d 305, affd 47 AD2d 1005). There is no merit to defendants' contention that plaintiff sustained no loss because it could not enforce its subrogation rights in Virginia. The very case cited by defendants holds that subrogation will be enforced by the Virginia courts where it is provided for pursuant to contract. *(Collins v Blue Cross of Va. & Blue Shield of Va.,* 213 Va 540.) Here it is undisputed that there was such a contract. Concur—Kupferman, J. P., Birns, Fein, Lupiano and Yesawich, JJ.