**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,**

v.

**PROTECTION MUTUAL INSURANCE COMPANY, Defendant.**

**No. 83 Civ. 8554 (MJL).**

United States District Court, S.D. New York.

April 3, 1985.

Greenhill, Speyer & Thurm by John M. Speyer, New York City, for plaintiff.

Rein, Mound & Cotton by Erica Bunin, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This is an action between two insurance companies which dispute liability for a building fire loss. The parties agree that there are no disputed material issues of fact and cross move for summary judgment. For the reasons stated below we deny summary judgment to plaintiff, we grant summary judgment to defendant and dismiss the action.

## BACKGROUND

The dispute centers around commercial real estate on the west side of Manhattan. The premises in question were held by Paul Saurel and The United States Trust Company as trustees under a will ("Trust"). Part of the premises were leased to the Pellon Corporation ("Pellon") pursuant to a written lease with Trust which *inter alia* provided that if the premises were damaged by fire the landlord (Trust) would bear the cost of repair. (Lease ¶ 9, annexed to affidavit of Edward Masterson as Exhibit "E").

Trust entered into a contract of insurance with plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") to protect against, *inter alia*, fire damage to the building.

Pellon also entered into an insurance contract. Pellon's contract was with defendant Protection Mutual Insurance Company ("Protection"). The Protection policy was a general business insurance policy which covered stock, inventory and other personalty as well as fire damage to the betterments and improvements. When the building was swept by fire, Pellon suffered

$446,000 in stock and equipment losses and the premises received approximately $188,000 in damages.

Protection paid Pellon $446,000 in personal property loss. Pellon requested that Trust make repairs pursuant to the lease. Trust in turn made a damage claim against St. Paul for the loss. When St. Paul disputed liability, Trust refused to make repairs. Pellon then instituted an action on the lease to enforce Trust's obligation to repair. Trust brought a third-party action against St. Paul for indemnification.

Settlement of that litigation was reached under which St. Paul paid for the fire damage by a check made out to Pellon and Trust jointly. Trust endorsed the check and Pellon made repairs. The Settlement agreement also provided that St. Paul would be "subrogated to, and the assignee of any and all rights which Pellon has against Protection for said loss..." (Agreement annexed as Exhibit "J" to the affidavit of Edward Masterson).

St. Paul now brings the instant action in an attempt to recover some or all of its payment from Protection. St. Paul alleges two grounds for recovery. First it claims that both insurance policies are so-called "excess" insurance thus under the law the insurers must share the loss pro rata based on the total coverage available. St. Paul's second claim is that Protection is liable to it for the full loss as Pellon's subrogee.

## DISCUSSION

### (a) Excess Insurance

■ Both policies covered the fire damage to the improvement and betterments of the property and both policies contained so-called "excess" insurance clauses. An excess insurance clause requires that any primary insurance coverage on the same interest be exhausted before a claim may be made on the policy. However in this case both policies proported to be excess to the other. In such a situation, it is well settled law that the insurers must share the loss pro rata. *See e.g. Federal Ins. Co. v. Atlantic National Ins. Co.*, 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193 (1969), *IBM World Trade Corp. v.*

*Granite State Ins. Co.*, 116 Misc.2d 681, 455 N.Y.S.2d 914 (Sup.Ct.N.Y.Co.1982).

■ Protection argues, however, that the policies were not excess since they covered different insurable interests and different insureds. In support of its argument, Protection cites *Oakley v. Firemen's Ins. Co. of Newark*, 70 N.Y.S.2d 458 (Supp. Ct.N.Y.Co.1947) which states in pertinent part:

Double insurance * * * is where two or more insurances are made in favor of the *same assured, on the same interest* in the same subject against the same risks ... 'Other Insurance' must be on the same interest, and insurance obtained by a third person upon another distinct insurable interest does not constitute 'other insurance' within the meaning of an apportionment clause.

70 N.Y.S.2d at 460 (emphasis added) (citations omitted). *See also Mercantile Credit Corp. v. Glens Falls Insurance Company*, 22 A.D.2d 1009, 254 N.Y.S.2d 614 (4th Dept.1964); *Eastway Construction Corp. v. New York Property Insurance Underwriting Association*, 86 Misc.2d 537, 382 N.Y.S.2d 949 (Civil Ct.N.Y.Co.1976), *aff'd*, 92 Misc.2d 1075, 402 N.Y.S.2d 782 (App. Term, 1st Dept.1977).

The case of *Mercantile Credit Corporation v. Glens Falls Ins. Co.*, 22 A.D.2d 1009, 254 N.Y.S.2d 614 is very instructive. In that case Mercantile gave a chattel mortgage on certain livestock and entered into an insurance contract to protect its interest as mortgagee. The owners of the livestock also procured insurance on the livestock. When the livestock was destroyed, Mercantile's insurer claimed its policy was excess to the owners' insurance policy. The Appellate Division explained that the policies were not excess because Mercantile's policy protected a mortgage interest and the other policy protected the fee holders "as owners." Thus the Court concluded that the policies "covered and protected entirely different interests (citations omitted)." 22 A.D.2d at 1010, 254 N.Y.S.2d at 615.

In the instant case it is undisputed that the St. Paul policy named only Trust as the

insured and the Protection policy named only Pellon as its insured. Thus the two policies covered different insureds, moreover the insurable interests are clearly different. Pellon's interest was a leasehold while Trust's was in fee.

St. Paul's only response to this argument is the bald statement "Since there was double coverage covering the same property and the same peril, St. Paul is entitled to contribution from Protection for its pro rata share." Plaintiff's reply memorandum at 1. Plaintiff does not cite, nor can the Court find a single case contrary to Protection's argument.

We must agree with Protection that the pro rata loss rule of *Federal Insurance* does not apply because the interest and insureds differ. Accordingly we grant summary judgment to defendant on plaintiff's claim for contribution based on the excess insurance clause.

(b) *Subrogation*

■ St. Paul's second ground for relief is a logical quagmire. St. Paul argues that once it payed for the fire damage it gained Pellon's rights of action against Protection. In support of this argument St. Paul relies on the settlement agreement which specifically provides for the "subrogation" and "assignment" of all rights Pellon held against Protection. The settlement also provided that it did not in any way prejudice those rights. Thus, St. Paul argues, that Pellon has a right of action against Protection, and St. Paul is simply enforcing that right as Pellon's subrogee. While this argument has some facial appeal, it contains a fatal flaw.

Assuming that the assignment subrogation was valid,[1] the subrogee (St. Paul) stands in the shoes of the subrogor (Pellon). If Pellon had sued Protection, Protection would have received Pellon's rights against any third party by subrogation. Thus Protection would have Pellon's rights to sue Trust on the Lease.[2] Trust would have impleaded St. Paul and St. Paul would have been held liable for the full loss. The same result must occur here, where St. Paul, standing in Pellon's shoes, sues Protection.

Graphically represented the transaction would look like this:

St. Paul

(as Pellon's subrogee on the settlement agreement)

–v–

Protection
on its policy

\*    \*    \*

---

1. Protection argues that the assignment subrogation under the settlement agreement failed for want of consideration and that even if the assignment was effective St. Paul could not recover. Protection claims that Pellon received nothing for its assignment to St. Paul since Trust (and St. Paul as Trust's insurer) was unconditionally bound to make repairs under the terms of the lease. Thus, Protection claims the settlement contract was without consideration. While this contention may have some merit we do not believe that it is necessary to reach that question. Protection also argues that the cases of *Patent Scaffolding Co. v. William Simpson Construction Co.*, 256 Cal.App.2d 506, 64 Cal. Rptr. 187 (1967) and *California Food Service Corp. v. Great American Insurance Co.*, 130 Cal. App.3d 892, 182 Cal.Rptr. 67 (Ct.App.1982) dictate dismissal, however factual distinctions make those cases inapplicable.

2. St. Paul may argue that the settlement with prejudice of the dispute between Trust and Pellon ended the chain. Thus St. Paul could recover from Protection but Protection as Pellon's subrogee (via St. Paul) could not recover from Trust. However, either Pellon breached the policy by signing the settlement without Protection's approval, thereby extinguishing any rights which St. Paul would have against Protection, or the settlement does not bar recovery of any loss by Protection from Trust and St. Paul. *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 505 F.Supp. 840 (S.D.N.Y.1981); *Governments Employees Insr. Co. v. Halfpenny*, 103 Misc.2d 128, 425 N.Y.S.2d 212 (Sup.Ct.N.Y.Co. 1980); *Aetna Casualty & Surety Co. v. Schulman*, 70 A.D.2d 792, 417 N.Y.S.2d 77 (1st Dept. 1979); *Silinsky v. State-Wide Ins. Co.*, 30 A.D.2d 1, 289 N.Y.S.2d 541 (2d Dept.1968). In either case we must hold that St. Paul has no right of recovery against Protection. Under the first alternative if Pellon did breach the policy, St. Paul, which stands in Pellon's shoes, received no rights against Protection. On the other hand, if Pellon did not breach the policy, Protection would have received Pellon's rights against Trust and St. Paul on the lease. Therefore any recovery St. Paul received from Protection would have to be repaid to Protection.

Protection

(as Pellon's subrogee on its policy)

–v–

Trust

on the lease

\*　　\*　　\*

Trust

–v–

St. Paul

on its policy

Under these circumstances the principles of judical economy dictate dismissal. Moreover equitable considerations for Pellon and Trust must bar this futile circle.

In the final analysis Trust and Pellon contracted in good faith by lease that Trust should bear the risk of fire loss to the premises. St. Paul and Trust in turn contracted to shift the risk to St. Paul by way of their insurance policy. St. Paul received valuable consideration for assuming the risk. It may not now avoid the liability which it willingly contracted to accept.

The plaintiff's motion for summary judgment is denied, the defendant's motion for summary judgment is granted and the case is dismissed.

It Is So Ordered.