SOCIETY INSURANCE, Plaintiff-Respondent,

v.

CAPITOL INDEMNITY CORPORATION, Defendant-Appellant.

Court of Appeals

*No. 02–1856. Submitted on briefs December 3, 2002.—Decided February 4, 2003.*

2003 WI App 61

(Also reported in 659 N.W.2d 875.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Allen M. Ratkowski* and *Jeaneen J. Dehring* of *Piper & Schmidt*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Arthur P. Simpson* of *Simpson & Deardorff, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Capitol Indemnity Corporation appeals from a summary judgment granted in favor of Society Insurance in an insurance coverage dispute. Capitol claims the trial court erred when it found Society was entitled to contribution from Capitol for a claim Society paid for property damage to an insured following a fire at the insured premises. Because the two insurance policies did not insure the same interest or the same insureds, contribution is not appropriate, and we reverse the judgment and remand to the trial court with directions to grant judgment in favor of Capitol.

## BACKGROUND

¶ 2. The following facts are undisputed. On October 13, 2000, a fire occurred at the Broadway Baby, a restaurant located at 7155 North 43rd Street in Milwaukee. The restaurant was operated by John Bohan, who leased the premises from the owner, Thomas Beckman. As a part of the lease agreement, Bohan was responsible for obtaining property damage insurance for the property, which he did. Bohan procured a policy of businessowner's property and liability insurance from Society, which went into effect on January 23, 2000. On October 11, 2000, the policy was amended. Among other items, the amendment named Beckman as an "additional insured"—per an attached schedule. The attached schedule provided:

A. The following is added to Paragraph C. WHO IS AN INSURED in the Businessowners Liability Coverage Form:

4. The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

¶ 3. Beckman also obtained insurance for the North 43rd Street property from Capitol. Under the Capitol policy, Beckman was the only named insured and the business description was for "Lessor's Risk."

¶ 4. After the October 13, 2000 fire, Bohan made a claim under his policy with Society. Society paid $41,071.60 as compensation for damages to the property. Society then sought contribution from Capitol. Capitol denied that it owed Society any contribution for the claim.

¶ 5. Beckman never filed a claim for the loss with Capitol. In fact, Beckman requested that Capitol cancel the insurance policy retroactive to the day before the fire occurred. Capitol complied with this request. Society then filed a declaratory judgment action against Capitol asking the court to declare that Capitol's policy also applied to the loss incurred at the property and seeking contribution. Both parties filed motions seeking summary judgment in their favor.

¶ 6. The trial court granted Society's motion and denied Capitol's motion. The trial court found that retroactive cancellation after a loss has occurred violates public policy in Wisconsin. The trial court also found that the two policies covered the same interest, the same insured, and the same loss. As a result, the trial court ordered Capitol to pay Society contribution on a *pro rata* basis, in the amount of $16,187.51. Judgment was entered. Capitol now appeals.

## DISCUSSION

¶ 7. The issue in this case is one of first impression: whether an insurer for an owner/lessor of property is liable to pay contribution to the lessee's insurer for damages occurring to the property. This case was resolved on cross-motions for summary judgment.

¶ 8. We review orders for summary judgments independently, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The interpretation of an insurance contract presents a question of law for our independent review. *Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis. 2d 77, 84, 540 N.W.2d 26 (Ct. App. 1995). We interpret an insurance policy using the same

rules of construction that are applied to other contracts. *Allstate Ins. Co. v. Gifford*, 178 Wis. 2d 341, 346, 504 N.W.2d 370 (Ct. App. 1993). "The policy language, as the agreed-upon articulation of the bargain reached between the parties, is dispositive to the extent it is plain and unambiguous." *Id.* If the terms of an insurance contract are plain on their face, the policy must not be rewritten by construction. *Id.* When the terms of the policy are unambiguous, they should be applied according to their everyday meaning, except where the policy itself provides an application definition. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 736, 351 N.W.2d 156 (1984).

¶ 9. Capitol claims that the trial court erred in ruling that it should pay contribution to Society for a portion of the compensation Society expended for damages caused by the fire. Capitol contends that it does not owe contribution for three reasons: (1) the insurance policy was retroactively cancelled by Beckman, and, as a result, was not in effect on the date of the fire; (2) Capitol's insurance policy and Society's insurance policy do not cover the same interest; and (3) the two insurance policies do not cover the same insured. Capitol's first contention is incorrect, but its second and third theories prevail.

*A. Retroactive Cancellation.*

¶ 10. First, Capitol contends that its policy was not in effect on the date of loss because Beckman retroactively cancelled the policy. Society argues, and the trial court agreed, that retroactive cancellation here is contrary to public policy in this state. We agree.

¶ 11. Although Capitol correctly argues that parties to a contract are free to modify the terms of the

contract, they may not do so under the circumstances presented here. *See generally Ciokewicz v. Lynn Mut. Fire Ins. Co.*, 212 Wis. 44, 248 N.W. 778 (1933). Our supreme court has already rejected an attempt to rescind a fire insurance policy after a known loss. *Id.* at 48. "The rights of the parties bec[o]me fixed when the loss occur[s]." *Id.* Here, Beckman attempted to retroactively cancel his policy with Capitol after the loss occurred. Beckman stated in his March 14, 2002 affidavit that he requested the retroactive cancellation because he did not want Capitol to pay on this loss. Once a loss occurs, the parties may not retroactively cancel a policy which potentially covers that loss. *See id.* Capitol attempts to distinguish *Ciokewicz* because the insured in *Ciokewicz* changed his mind about cancellation, at first requesting cancellation and later indicating he did not want the policy cancelled. *Id.* at 48–49. We cannot hold that Beckman's continuing desire to cancel the policy distinguishes this matter from *Ciokewicz*.

■■■■■

¶ 12. Our supreme court clearly indicated that the rights of the parties become fixed when the loss occurs. "An agreement of the parties and a return of a *pro rata* [] premium will not exempt an insurer from liability for loss which had previously occurred while the policy was in force." *Id.* Our supreme court reached this conclusion on sound fundamental principles. Allowing retroactive cancellation after a loss has occurred is contrary to good public policy and could lead to inequitable results. We decline to depart from the longstanding law established in *Ciokewicz*. Beckman's retroactive cancellation here was ineffective; therefore, we reject his contention that the Capitol policy was not in effect at the time of the fire loss.

## B. *Identity of Insureds.*

¶ 13. Contribution is an equitable remedy that is available between insurance companies that are equally liable for the discharge of common obligations. *See Reliance Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 13 F.3d 982, 983 (6th Cir. 1994). That is, contribution may be available when there is "double coverage" for the loss. *Id.* Double coverage exists only when both policies cover the same property, and the same interest in the property, against the same risk for the same insured. *Id.*

¶ 14. Both parties agree that contribution is available only under those circumstances. They disagree, however, as to whether those circumstances are present in this case. Capitol argues that the two polices covered different insurable interests and different insureds; therefore, it does not owe contribution to Society. Capitol apparently concedes that the two insurance policies cover the same property, i.e., the building/restaurant located at 7155 North 43rd Street.

¶ 15. Capitol's policy insured Beckman, who had an insurable interest in the property as owner, while Society's policy insured Bohan, who had an insurable interest as lessee/operator of the property. Capitol maintains, therefore, that there is no identity of insureds. Society points out, however, that its policy names Beckman as an "additional insured," for his lessor's interest in the property. Society suggests that on this basis there is an identity of insureds because both policies name Beckman as an insured for his lessor's interest. Capitol concedes that Beckman was named as an additional insured in Society's policy, but responds that an endorsement makes Beckman an

insured only as to liability under Society's policy—not an insured for the purposes of property damage.

¶ 16. The endorsement referred to involved a mid-term change to the policy, which added Beckman as an additional named insured. Capitol contends that the amendment added Beckman as an additional insured only under the liability coverage of the policy and not under the property damage portion of the policy. Society responds that the amendment added Beckman under both the property damage and liability coverages, but simply placed a limitation on the liability coverage available to Beckman under the policy. Society argues that the amendment reduced liability coverage, but did not affect property coverage.

¶ 17. We conclude that Society's interpretation of the insurance provisions here is not reasonable. The record reflects that Beckman was added as an additional insured "per attached schedule." The schedule provides:

A. The following is added to Paragraph C. WHO IS AN INSURED in the Businessowners Liability Coverage Form:

 4. The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

¶ 18. There is no indication within the terms of the insurance policy that Beckman was added as an additional insured "for any and all purposes" or both for the purposes of property coverage and liability coverage. Thus, based on our review of the policies at issue, we conclude that there was not an identity of insureds.

Capitol's policy provided coverage solely to Beckman. Society's policy provided property damage coverage solely to Bohan, and liability coverage to both Bohan and Beckman. Because this case involved a claim under the property damage provision of Society's policy, there was no identity of insureds and contribution is not available.

*C. Insurable Interest.*

¶ 19. Capitol further contends that the two insurance policies insure different interests and, therefore, contribution is not appropriate in this case. Specifically, it points out that the interest insured by Capitol is an owner's interest, while the interest insured by Society is a lessee's interest. Capitol relies on *St. Paul Fire and Marine Ins. Co. v. Protection Mut. Ins. Co.*, 607 F. Supp. 388 (S.D.N.Y. 1985). The landlord in *St. Paul* owned commercial real estate on the west side of Manhattan and leased the premises to the tenant. *Id.* at 389. In that case, the court held that the insured's interests were separate and distinct because the landlord's interest was in fee, while the tenant's interest was a leasehold. *Id.* at 391.

¶ 20. We find that case persuasive. Moreover, the majority of cases which have addressed this or similar issues agree that double coverage does not exist when the insurable interests are separate and distinct. *See M.F.A. Mut. Ins. Co. v. Gulf Ins. Co.*, 445 S.W.2d 829, 833 (Mo. 1969) (building insurer was not entitled to contribution from contractor's insurer for loss occurring during construction of a building because the risks and interests were not identical); *Mission Nat'l Ins. Co. v. Hartford Fire Ins. Co.*, 702 F. Supp. 543, 545 (E.D. Pa. 1989) (because the policies covered different insureds

and protect different insurable interests, there was no right to contribution); *McCoy v. Continental Ins. Co.*, 40 N.W.2d 146, 149–50 (Mich. 1949) (vendor's policy and vendee's policy "were on the same property and against the same risks but on different interest and payable to different parties"); and *Lititz Mut. Ins. Co. v. Lengacher*, 248 F.2d 850, 854 (7th Cir. 1957) (property owner and building contractor held separate and distinct interests in the same property and therefore may not prorate the loss).

¶ 21. The trial court struggled with the suggestion that the owner and the lessee's interests were separate and distinct because the sole occupant of the building was the restaurant operated by Bohan. Thus, the trial court could not distinguish between the interest of the owner and the interest of the operator, which it viewed as the same—protecting the property against fire loss. The trial court's misunderstanding may have arisen in part because of its inadvertent practice of interchanging the terms "interest" and "risk." As noted, for contribution to apply, the insurance policies must cover the same property, the same insured, the same risk, and the same interest. COUCH ON INSURANCE 3d § 219:14 (1999). *Interest* and *risk* are sometimes merged into the same concept, rather than addressed separately. This appears to be what happened in the trial court—the trial court initially indicated that both policies insured the same *risk* and later concluded that therefore the policies covered the same *interest*. The trial court did not address *risk* and *interest* as separate concepts. The concept of risk involves the type of damage insured against—such as fire, calamity, catastrophe or liability. *See generally* 7 COUCH ON INSURANCE § 101.3. Interest, on the other hand, addresses how the

insured is connected to the property—such as fee simple versus leasehold, or seller versus buyer versus builder. *See, e.g., St. Paul Fire & Marine Ins.*, 607 F. Supp. at 391. The insurable interest—or stake—the insured has in the property is distinct from the type of risk.

¶ 22. Here, the trial court was partially correct in that, under the circumstances of this case, the two insurance policies provided coverage for the *same risk* —both provided fire loss coverage for the property at issue. Nevertheless, the insurance policies each provided coverage for separate and distinct *insurable interests*. Society's policy covered Bohan's insurable interest as operator of the restaurant located in the building. Capitol's policy covered Beckman's interest as owner of the building, which housed the restaurant.

¶ 23. As the *St. Paul* court noted, the insurable interests between landlord and tenant are distinct. This is so because a landlord and his lessee have different and potentially adverse interests in the property. *Peerless Ins. Co. v. Bailey Mortgage Co.*, 345 F.2d 14, 18 (5th Cir. 1965). Although it may not always be easy to articulate the different interests, they are clearly not the same. The owner benefits both as the title-holder to the property and as the landlord. The operator benefits solely from the proceeds generated by the business operated in the building. If the property is destroyed, the owner loses both the rental income and the value of the real estate, whereas the tenant loses income from the business, goodwill and other items related to the business.

## CONCLUSION

¶ 24. In sum, we conclude that the trial court erred in entering judgment in favor of Society and ordering Capitol to pay contribution. Rather, the trial court should have granted summary judgment to Capitol because no contribution claim accrued under the facts and circumstances presented here—there was neither an identity of insureds nor insurable interests. Accordingly, we reverse the judgment and remand the matter to the trial court with directions to enter judgment in favor of Capitol.[1]

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[1] Society asks us to affirm the trial court on the basis that Wis. Stat. § 631.43(1) creates a contribution action. We decline the invitation. Section 631.43(1) does not apply here. This statute is intended to protect an insured "[w]hen 2 or more policies promise to indemnify an insured against the same loss." *Id.* That is not the situation presented in this contribution action. The statute does not apply to disputes between insurers in a proration action. *State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co.*, 174 Wis. 2d 434, 439, 498 N.W.2d 247 (Ct. App. 1993). Moreover, the dispute about the "other insurance" clauses within Society's and Capitol's policies does not need to be addressed based on our disposition of this case.